IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DAVID E. HILL,                          :
                                        :
          Plaintiff                     :
                                        :
     v.                                 :    CIVIL NO. 3:CV-11-1609
                                        :
HARLEY LAPPIN, ET AL.,                  :    (Judge Conaboy)
                                        :
          Defendants                    :

_____

**MEMORANDUM**
**Background**

       David E. Hill (Plaintiff), an inmate presently confined at

the United States Penitentiary, Lewisburg, Pennsylvania (USP-

Lewisburg) initiated this Bivens[1]-type pro se civil rights action.

Service of the complaint and accompanying supporting documents was

previously ordered.

       Named as Defendants are Director Harley Lappin and Northeast

Regional Director J. Norwood of the Federal Bureau of Prisons (BOP)

and the following USP-Lewisburg officials: Warden B. Bledsoe;

Assistant Health Services Administrator (AHSA) R. Parkyn; Nurse B.

Prince; Physician's Assistant (PA) I. Navarro; and Lieutenants W.

McFadden, J. Hepner, M. Saylor, M. Edinger, and P. Carrasquillo.

_____

1.  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,
403 U.S. 388 (1971). Bivens stands for the proposition that "a
citizen suffering a compensable injury to a constitutionally
protected interest could invoke the general federal question
jurisdiction of the district court to obtain an award of monetary
damages against the responsible federal official." Butz v.
Economou, 438 U.S. 478, 504 (1978)

Plaintiff states that while being held in ambulatory restraints on June 22, 2010, Lieutenant Hepner conducted a two hour restraint check.  <u>See</u> Doc. 1, ¶ 17.  When asked by Hepner if he was ready to accept a cellmate and be released from his restraints, Hill responded in the affirmative.  After being escorted to the first floor shower room and removed from his restraints, Plaintiff acknowledges that he informed Hepner that he had changed his mind and would not accept a cellmate.  <u>See id</u>.  According to the Complaint, Hepner became angry with Plaintiff's change of mind and returned an hour later with a use of force team.

When pulling him from the shower room, Hill contends that the force team twisted his neck and bend his back in a compromising position and placed him back in ambulatory restraints.  Plaintiff asserts that those restraints (handcuffs, belly chain and leg irons) were maliciously applied too tightly and caused injury.  PA Navarro purportedly oversaw and approved the application of the ambulatory restraints which the Complaint concludes were used as a "torturing device."  <u>Id</u>.

Plaintiff asserts that he was then dragged to a Z Block cell where he was put in four point restraints on a steel and concrete slab.  Hill adds that he was forced to lay spread eagle on his back with the restraints again being applied too tightly.[2]  <u>See id</u>. at ¶ 18.  Two hours later, Defendants Lieutenant Carrasquilla and Nurse

---

2.  Four point restraints involves placing an inmate in a supine position on his bed and binding his hands in soft restraints to the corners of his bed.  <u>See</u> <u>Kee v. Hasty</u>, 2004 WL 807071 1, n. 3. (S.D. N.Y. April 14, 2004).

Prince conducted a mandated restraint check and allegedly ignored Plaintiff's complaints of neck and back pain.  In addition, Carrasquilla refused to loosen Plaintiff's restraints or allow him to use the bathroom.  See id. at ¶ 19.  As a result, Plaintiff asserts that he had to lay in his own waste.

The next day, Defendant Saylor conducted a restraint check and likewise ignored Hill's complaints of pain, and his requests to have his restraints loosened and to use the bathroom.  Several hours late, Hepner conducted a restraint check and similarly ignored Plaintiff's similar complaints and requests.  The next restraint check was conducted by Defendants Edinger and Prince who also refused to provide Plaintiff with any assistance.

After 48 hours elapsed, Plaintiff states that he was finally removed from the four point restraints.  During a visit to sick call on June 25, 2010 PA Navarro again allegedly failed to provide Hill with needed medical care.  Although Plaintiff sent a letter to defendant AHSA Parkyn regarding Navarro's lack of action, he still did not receive needed medical care.

The Complaint also alleges that Hill's chronic asthma for which he is prescribed an Alubterol inhaler is being compromised by his being housed in a cell with inadequate ventilation and the use of chemical sprays such as pepper gas against other prisoners in his housing unit.  Plaintiff concludes that the use of force and his placement in ambulatory and four point restraints constituted cruel and unusual punishment.  In addition, there was deliberate indifference to his resulting medical needs.  Hill seeks

3

declaratory and injunctive relief as well as compensatory and
punitive damages.

Defendants responded to the Complaint by filing a motion to
dismiss and for summary judgment.  <u>See</u> Doc. 17.  The opposed motion
is ripe for consideration.  Also pending before the Court are
Plaintiff's motion to continue (Doc. 32) and Defendants' motion
seeking issuance of a protective order.  <u>See</u> Doc. 36.

### **Discussion**

### **Motion to Dismiss**

Defendants' pending dispositive motion is supported by
evidentiary materials outside the pleadings.  Federal Rule of Civil
Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or
> 12(c), matters outside the pleading are
> presented to and not excluded by the
> court, the motion must be treated as one
> for summary judgment under Rule 56. All
> parties must be given reasonable
> opportunity to present all the material
> that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials
accompanying the Defendants' motion.  Thus, their motion will be
treated as solely seeking summary judgment.  <u>See</u> <u>Latham v. United</u>
<u>States</u>, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to
dismiss has been framed alternatively as a motion for summary
judgment such as in the present case, the alternative filing "is
sufficient to place the parties on notice that summary judgment
might be entered.")

4

**Summary Judgment**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see

also Saldana, 260 F.3d at 232 (citations omitted).  Summary
judgment should be granted where a party "fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden at
trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence
– regardless of whether it is direct or circumstantial – must
amount to more than a scintilla, but may amount to less (in the
evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d
at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458,
460-61 (3d Cir. 1989)).

**Eleventh Amendment**

        Defendants' initial argument contends that Plaintiff's
action to the extent that it raises claims for monetary damages
against them in their official capacities is barred by the Eleventh
Amendment.  See Doc. 22, p. 5.

        The United States is generally immune from suit absent an
explicit waiver of sovereign immunity, United States v. Mitchell,
445 U.S. 535, 538 (1980).  This "immunity is jurisdictional in
nature," FDIC v. Meyer, 510 U.S. 471, 475  (1994), and extends to
government agencies and employees sued in their official
capacities.   Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996);
Chinchello v. Fenton, 805 F. 2d 126, 130, n. 4 (3d Cir. 1986).

        "Congress has not waived sovereign immunity for damages
claims for constitutional violations."  Germosen v. Reno, Civil No.
99-1268, slip op. at 13 (M.D. Pa. Sept. 20, 2000)(Vanaskie, C.J.).
Therefore, entry of summary judgment in favor of the Defendants is

appropriate to the extent that the Complaint asserts <u>Bivens</u> claims against them in their official capacities.

**<u>Personal Involvement</u>**

Defendants next argue that there is no basis for liability with respect to the claims asserted against supervisory Defendants Director Lappin[3] and Regional Director Norwood of the BOP as well as USP-Lewisburg Warden Bledsoe since there is no allegation of personal involvement by any of those officials in the purported constitutional deprivations.  <u>See</u> Doc. 22, pp. 10-11.

This Court's review of the Complaint shows that with respect to those Defendants, Plaintiff claims that "Warden Bledsoe authorized the 4-points and update Norwood.  Bledsoe failed to implement procedures that would allow me to use the toilet, medical treatment, humane conditions, food and water."  Doc. 1, ¶ 24.  It is also alleged that Warden Bledsoe verbally refused Plaintiff's request for a transfer on the grounds that all prisoners are exposed to the use of chemical sprays in their housing units.  <u>See</u> <u>id</u>. at ¶ 28.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>See</u> <u>Groman v. Township of Manalapan</u>, 47 F.3d 628,

---

3.  Lappin is now retired.

638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Federal civil rights claims brought under § 1983 cannot be premised on a theory of <u>respondeat</u> <u>superior</u>. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3d Cir. 1976). As explained in <u>Rode</u>:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

<u>Rode</u>, 845 F.2d at 1207.

Retired Director Lappin and Regional Director Norwood were clearly employed in supervisory capacities by the BOP during the relevant time period. Likewise, Warden Bledsoe held a supervisory position at USP-Lewisburg. Pursuant to the standards announced in <u>Rode</u> this Court agrees that any attempt by Hill to establish liability against Defendants Lappin, Norwood, and Bledsoe **solely** based upon their respective supervisory capacities within either the BOP or USP-Lewisburg is insufficient.

It also appears that Plaintiff may be attempting to establish liability against Defendants Lappin, Bledsoe, and Norwwod

on the basis of their responses or non-response to his administrative grievances or complaints.  Prisoners have no constitutionally protected right to a grievance procedure.  See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).

Pursuant to those decisions, any attempt by Plaintiff to establish liability against Retired Director Lappin, Regional Director Norwood, and Warden Bledsoe based upon their handling of his administrative grievances or complaints does not support a constitutional claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional

rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

A review of the Complaint reveals that other than being listed as a Defendant there are no assertions of constitutional misconduct whatsoever set forth against Retired Director Lappin. Based upon the reasoning set forth in Rode, summary judgment will be entered in favor of Defendant Lappin.

Hill alleges that Warden Bledsoe authorized the use of four point restraints and personally rejected Plaintiff's request to be transferred to another housing unit.  The only allegation concerning Regional Director Norwood is Plaintiff's contention that said Defendant received updates from Warden Bledsoe.

Institutional records submitted by Defendants acknowledge that Plaintiff was placed in four point restraints with the approval of Warden Bledsoe on June 22, 2010 at 2:50 p.m. and remained restrained until June 24, 2010 at 10:00 a.m.  See Doc. 22-2, p. 22.  Those records further  provide that the BOP's Regional Director was informed of each eight (8) hour time period he spent in restraints.[4]

Based upon a review of the Complaint and institutional records, Plaintiff has adequately alleged personal involvement by Defendant Bledsoe with respect to his placement in four point restraints.  Likewise, since Plaintiff alleges and institutional

---

4.  BOP Policy Statement § 552.24 requires that when a prisoner is held in four point restraints more then eight (8) hours the Warden of the institution must so notify the regional Director by telephone.  Additional notifications must be provided for each ensuing eight (8) hour period of four point restraint.

records confirm that the Regional Director received periodic reports regarding Hill's placement in four point restraints as required by BOP policy.  Accordingly, adequate personal involvement has been also alleged against the Regional Director with respect to the four point restraint related claim.  Adequate personal involvement has also been asserted in regards to the allegation that Warden Bledsoe acted improperly by personally rejecting Plaintiff's request to be transferred to another housing unit.[5] Accordingly the request for summary judgment will be denied in those respects.

**Extraction/Application of Restraints**

Defendants' third argument maintains since correctional staff were able to place Plaintiff in ambulatory and four point restraints without the use of force there is no basis for a constitutional claim.  See Doc. 22, p. 14.

A correctional officer's use of force in order to constitute cruel and unusual punishment, must involve the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying

---

5.  There are no discernible claims that either Warden Bledsoe or Regional Director Norwood were personally involved in the purported deliberate indifference to Hill's medical needs.

medical needs, or restoring official control over a tumultuous cellblock." Id.

In a later ruling, the United States Supreme Court recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries. Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.), cert. denied, 531 U.S. 821(2000); Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)(even a de minimis use of force, if repugnant to the conscience of mankind, may be constitutionally significant).  As explained in Fuentes:

> Resolution of an Eighth Amendment claim therefore 'mandate[s] an inquiry into a prison official's state of mind.'  Two considerations define that inquiry.  We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections.  If not, our inquiry is at an end.  In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain.  'What is necessary to establish an "unnecessary and wanton infliction of pain. . ." varies according to the nature of the alleged constitutional violation.'However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind.

Fuentes, 206 F.3d at 344.

In support of their argument, Defendants have submitted videotape footage of the removal of the Plaintiff from Cell 201, his placement in ambulatory restraints and transfer to Cell 125

12

which occurred on the morning of June 22, 2010 beginning at 9:00 a.m.  See Doc. 21.  However, Plaintiff's pending action regards an incident which allegedly transpired at approximately 2:00 p. m. on June 22, 2010 after he had already been placed in Cell 125.  See Doc. 1, ¶ 17.  Defendants' statement of material facts likewise acknowledges that the incident underlying this matter began at approximately 2:30 p. m. on June 22, 2010 while Hill was housed on the first floor and ended with his placement in Cell 024 on Z Block.  See Doc. 23, p.¶ 32.

Accordingly, the events depicted on the videotape while having marginal relevance are not dispositive of the claims presently pending before this Court.  However, it is noted that documentary evidence submitted by Defendants does indicate that the incident at the center of this action was in fact videotaped.  See Doc. 22-2, p. 15.

Since Defendants' pending motion has failed to demonstrate that the undisputed facts establish that there was no use of excessive force and it appears that there is arguably dispositive videotape evidence of the underlying incident at issue which has not been submitted to the Court, the request for entry of summary judgment on the excessive force claim will be denied.[6]  However, Defendants will be afforded a further opportunity to seek summary

---

6.  Clearly, the most relevant and compelling evidence regarding this incident would be the purported videotape footage taken of the events at issue which hopefully details the entire extraction of Hill from the shower area as well as the subsequent escort carried out by the force team and finally, the inmate's placement in four point restraints.

13

judgment within thirty (30) days of the date of this Memorandum and Order.

**<u>Four Point Restraints</u>**

The claim which is the matter of greatest concern for this Court is Hill's placement in four point restraints for a period of slightly less than two days.  Institutional records submitted by Defendants acknowledge that Plaintiff was placed in four point restraints with the approval of Warden Bledsoe on June 22, 2010 at 2:50 p.m. and remained restrained until June 24, 2010 at 10:00 a.m. <u>See</u> Doc. 22-2, p. 22.  Those records further  provide that the BOP's Regional Director was informed of said action as mandated by BOP Policy Statement § 552.24 and was provided with additional updates for each additional eight (8) hour time period Hill spent in those restraints.

A declaration under penalty of perjury by USP-Lewisburg Attorney Advisor Michael Romano generally provides that although Hill "submitted to restraints ... [a]mbulatory restraints "were bypassed due to Plaintiff's highly agitated state and recent history of manipulating restraints."  Doc. 22-2, Exhibit 1, ¶ 3. Romano adds that the prisoner was placed in four point restraints and remained in said restraints for a period of less then forty-eight (48) hours.  Also submitted by Defendants is a copy of an incident report which provide that Hill was placed in four point

14

restraints because he was "displaying signs of imminent violence towards staff or other inmates."[7] Id. at Attachment B, p. 16.

The United States Supreme Court in Sandin v. Conner, 515 U.S. 472, 480-84 (1995), reasoned that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. Id. at 485. The Third Circuit Court of Appeals applying Sandin has found no merit in a procedural due process claim presented regarding disciplinary custody placement. See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest).

In Fuentes v. Wagner, 206 F.3d 335 (3d Cir. 2000) the Third Circuit Court of Appeals addressed a claim involving the placement of a prisoner in a restraint chair for eight (8) hours following a disturbance. The Court found that those circumstances did not constitute cruel and unusual punishment. A subsequent ruling, Camp v. Brennan, 54 Fed. Appx. 78, 81 (3d Cir. 2002) similarly concluded that the placement of four point restraints on a prisoner for two

---

7. The claim that Plaintiff was displaying signs of imminent violence is arguably contradicted by Defendants' acknowledgment that he voluntarily submitted to being placed in hand restraints twice on the date in question.
   Moreover, institutional records submitted by Defendants indicate with the exception of yelling one obscene remark and falsely indicating that he was willing to accept a cellmate Plaintiff was for the most part sitting at his desk or on his bed on the morning of the June 22, 2010. See Doc. 22-2 p. 28.

days while clothed only in a blanket did not constitute an Eighth Amendment violation.

Following those decisions, the United States Supreme Court handed down its decision in <u>Hope v. Pelzer</u>, 536 U.S. 730, 737-38 (2002) wherein it recognized that handcuffing an inmate to a hitching post for seven hours in a standing position, with his shirt off, subject to sunburn and scorching heat, without water or bathroom breaks while subject to taunting by correctional officers presented an Eighth Amendment violation.  It has been correctly noted that "to the extent that <u>Fuentes</u> and Camp conflict with <u>Hope</u>, the Supreme Court is binding authority." <u>Zimmerman v. Schaffer</u>, 654 F. Supp.2d 226, 249 (M.D. Pa. Aug. 17, 2009).

In <u>Womack v. Smith</u>, 2011 WL 819558 * 11 (M.D. Pa. March 2, 2011), it was recognized that the initial use of restraints may be characterized as an excessive force claim while the prolonged use of restraints is properly analyzed under the deliberate indifference standard.[8]  Based upon the evidence presented by Defendants it does not appear that prison officials intended that Hill undergo a lengthy restraint period.

Upon consideration of the factual evidence presented by the parties, the use of four point restraints on Plaintiff could be concluded as wanton infliction of pain in violation of the Eighth Amendment.  <u>See</u> <u>Zimmerman</u>, 654 F. Supp.2d at 249.  The use of four point restraints is generally viewed as being a measure of last

---

8.  <u>Womack</u> concerned a twenty-six (26) day period of placement in ambulatory restraints which are less restrictive then four point restraints.

resort.  See Williams v. Benjamin, 77 F.3d 756, 763  (4th Cir. 1996)(courts have approved the limited use of four point restraints, chaining a prisoner to his bed in a spreadeagle position, as a last resort when other forms of prison discipline have failed).  This conclusion of being a measure of last resort is bolstered by the BOP special reporting requirements implicated whenever such restraints are undertaken.[9]

Defendants have not provided this Court with competent details setting forth the reasons behind their decision to employ four point restraints in Hill's case.  In light of Defendants' acknowledgment that on the date in question Hill twice voluntarily consented to being placed in hand restraints and was not involved in any type of physical altercation there is an issue of material fact as to whether the implementation of four point restraints was necessary on the date in question.[10]

Second, although medical records submitted by Defendants show that Hill's restraints and his vital signs were regularly monitored there is also a material factual dispute as to whether

---

9.  In addition to the Regional Director reporting requirements previously discussed, correctional staff were also required per BOP policy to check Plaintiff every fifteen minutes.  See id. at p. 27. In addition a Lieutenant was required to conduct a restraint check every two hours.

10.  It is noted that Defendants have not submitted any affidavits or declarations under penalty of perjury setting forth the reasons underlying their decision to employ four point restraints.
There is clearly an issue as to whether the use of four point restraints was solely a punitive response for deceiving Lieutenant Hepner into allowing him to shower by agreeing and to accept a cell mate but then changing his mind after showering.

there was a need to keep Plaintiff in restraints for almost two days.  Once again Defendants have not provided the Court with sufficient facts establishing why the need for placement four point restraints persisted for almost two days.[11]  The request for summary judgment regarding the claims associated with the implementation of four point restraints will be denied.

**Medical Treatment**

Given the liberal treatment afforded pro se pleadings, Hill's raises two claims of deliberate indifference to his medical needs.  First, Plaintiff asserts that he was no afforded treatment for injuries suffered as a result of his extraction and placement into four point restraints.  Second, Hill claims that he has not been provided with sufficient care for his asthma.

With respect to the inmate's claim, Defendants note that Plaintiff's restraints and medical condition were regularly checked and prison medical staff found no sign that Hill suffered any injury with respect to the events of June 22, 2010.  See Doc. 22, p. 17.  In regards to Plaintiff's second claim, Defendants admit that the prisoner has a mild case of asthma for which he was been prescribed an Albuterol inhaler.  However, they assert that there is no basis for a claim of deliberate indifference because institutional medical records "are devoid of any evidence of the frequent, severe asthma attacks Hill claims to have suffered."  Id.

---

11.  This Court is also concerned with Plaintiff's assertion that he was not released from his restraints to use the bathroom and had to lie in his own waste.

18

In support of their argument defendants have submitted copies of Hill's relevant USP-Lewisburg medical records and a declaration under penalty of perjury by Physician Clinical director Kevin Pigos of USP-lewisburg.  Doctor Pigos asserts that "Hill has a mild intermittent asthma condition... which is well controlled through a first line terapy regimen consisting of PRN (as needed) albuterol inhaler."  Doc. 22-4 Exhibit 2, ¶ 3.  Moreover, with exception of medical refills restraint checks and complaints of lower back pain Plaintiff has not requested any medical care from June 2011 through November 15, 2011.[12]

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).  In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

---

12.  Inexplicably there is no mention by Pigos of the period following the June 22, **2010** incident.

19

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

It is apparent that the cuts and bruises allegedly suffered by Plaintiff as a result of his being transported to another cell and the ensuing application of ambulatory and four point restraints were not of such magnitude as to satisfy the serious medical need requirement.  While Hill remained in restraints, undisputed institutional medical records submitted by Defendants show that the prisoner was periodically checked per BOP policy.  See Doc. 22-2 Attachment C, F, G, & H, p. 4.  Plaintiff also underwent medical assessments during that period that revealed he had no compromise to his circulation and  "no medical complaints."  See id. at p. 8.

Accordingly, the undisputed record establishes that Plaintiff was evaluated by the prison's medical staff following his release from restraints and it was determined that he did not required any medical treatment.  Moreover, Plaintiff has not presented this Court with any evidence which could establish that

20

he suffered any injury which would satisfy the serious medical need requirement as a result of the events of June 2010.  Based upon Doctor Pigos' declaration that Plaintiff only has a mild, well controlled case of asthma with no reports of any serious asthma attacks , it is also questionable whether said condition satisfies the <u>Estelle</u> serious medical need threshold.

With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994).  A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  <u>Estelle</u>, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence.  <u>See</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  <u>See</u> <u>id</u>. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  <u>See</u> <u>id</u>.; <u>Ordonez v. Yost</u>,

21

289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

It is undisputed that Plaintiff received regular medical assessment during the course of his four point restraints. Moreover, the record is equally clear that Plaintiff's was provided with timely treatment and medication for a mild asthmatic condition. Pursuant to the standards developed in Estelle and Durmer, it is clear that Hill's assertions at best sound in negligence, not deliberate indifference. Whooten v. Bussanich, No. 07-1441, slip op. at 4 (3d Cir. Sept. 12, 2007)(citation omitted). Thus, entry of summary judgment in favor of Defendants with respect to the claims that there was deliberate indifference to Plaintiff's medical needs is appropriate.

**Transfer**

Plaintiff also alleges that Warden Bledsoe was deliberately indifferent by denying his request for a transfer to a different cell block. Plaintiff indicates that the requested transfer was to avoid exposure to chemical sprays which impacted his asthmatic condition.

With respect to federal prisoners, the BOP has the power, pursuant to 18 U.S.C. § 3621(b), to "transfer a prisoner from one facility to another at any time." Prows v. Federal Bureau of Prisons, 981 F.2d 466, 469 n.3 (10th Cir. 1992), cert. denied, 510 U.S. 830, 114 S. Ct. 98 (1993); Cardenas v. Wigen, 921 F. Supp. 286, 291 (E.D. Pa. 1996). Section 3621(b) authorizes the Bureau

22

"to designate the place of confinement for purposes of serving federal sentences of imprisonment." Barden v. Keohane, 921 F.2d 476 (3d Cir. 1991).

Moreover, "the assignment of roomates and placement of prisoners within the prison is a matter of internal prison security and thus, a matter within the discretion of prison officials." Tolbert v. Seiter, 852 F.2d 569 (6th cir. 1988) (citing Crowe v. Leek, 540 F.2d 740 (4th Cir. 1976)).

Plaintiff has not presented any evidence that certain sections of the prison were more prone to the use of chemical sprays than others.  More importantly, there is no claim by Plaintiff or any evidence whatsoever to suggest that Warden Bledsoe ignored any medical recommendation that Hill be transferred to a different cell.  In light of those factors, any decision by the Warden to deny Hill's request to be moved to a different cell does not rise to the level of a constitutional violation.

**Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity.  As discussed above this Court has granted summary judgment in favor of defendants with exception of the claims that regarding the claims associated with the use of force while Hill was extracted from the shower area and placed in ambulatory restraints as well as the allegations relating to the implementation and duration of four point restraints.

Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  Verney v. Pennsylvania Turnpike

23

Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In Harlow v.
Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court
held "that government officials performing discretionary functions
generally are shielded from liability for civil damages insofar as
their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known."  Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99
(3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D.
Pa. 1997).  It has also been held that "qualified immunity is
coextensive for suits brought against state officials under 42
U.S.C. § 1983 (1982), and for suits brought directly under the
Constitution against federal officials."  People of Three Mile
Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9
(3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S.
194 (2001), subsequently established a two part test for analyzing
qualified immunity claims.  See also Curley v. Klem, 298 F.3d 271
(3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002).
The initial inquiry in a qualified immunity examination is whether
"the facts taken in the light most favorable to the plaintiff show
a constitutional violation."  Bennett, 274 F.3d at 136.  The second
prong requires a determination as to whether the constitutional
right at issue was clearly established.  If so, then a court must
inquire as to "whether it would be clear to a reasonable officer
that his conduct was unlawful in the situation he confronted."
Saucier, 533 U.S. at 201.  A determination that the conduct

violated a clearly established constitutional right precludes the granting of qualified immunity.

Based upon the Court's discussion as to the lack of evidence presented by Defendants regarding Hill's surviving claims, disposition of defendants' qualified immunity request will be dismissed without prejudice as premature.

Finally, in light of this Court's conclusion that Hill's claims regarding the alleged use of excessive force and the implementation of four point restraints should proceed, Plaintiff's motion requesting a continuance to obtain discovery regarding those events will be dismissed as moot.

In addition, Defendants' motion requesting entry of a protective order relieving them of their obligation of responding to Plaintiff's discovery pending resolution of their dispositive motion will be denied as moot. Defendants shall respond to any outstanding discovery requests within thirty (30) days of the date of this Order.  An appropriate Order will issue.[13]

S/Richard P. Conaboy
Richard P. Conaboy
United States District Judge

---

13.  It is additionally noted that Plaintiff has filed  prior unsuccessful civil rights actions which raised similar claims that Hill's head and neck were twisted during cell extractions and he suffered injury due to his placement in overly tight ambulatory restraints.  See Hill v. Lappin, et. al., Civil No. 3:CV-11-319. It is troubling that Plaintiff has raised repetitive claims of suffering the same injuries.