IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DAVID E. HILL,                         :
                                       :
            Plaintiff                  :
                                       :
      v.                               :    CIVIL NO. 3:CV-11-1609
                                       :
HARLEY LAPPIN, ET AL.,                 :    (Judge Conaboy)
                                       :
            Defendants                 :

_____

**MEMORANDUM**

**Procedural History**

      This pro se civil rights complaint was filed by David E.
Hill (Plaintiff), an inmate presently confined at the High Security
United States Penitentiary, Florence Colorado, Pennsylvania (USP-
Florence).[1]  Remaining Defendants are Northeast Regional Director
J. Norwood of the Federal Bureau of Prisons (BOP) and the following
officials at Plaintiff former place of confinement, the United
States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg):
Warden B. Bledsoe; and Lieutenants W. McFadden, J. Hepner, M.
Saylor, M. Edinger, and P. Carrasquillo.

      By Memorandum and Order dated September 17, 2012,
Defendants' motion for summary judgment was partially granted.  See
Doc. 40.  Specifically, summary judgment was entered in favor of
Defendants Harley Lappin; PA I. Navarro; Nurse B. Prince; and AHSA

_____

1.  Plaintiff was transferred to USP-Florence in late December
2012.  See Doc. 58.

1

R. Parkyn.  Entry of summary judgment was also granted with respect to any claims against Remaining Defendants Norwood, and Bledsoe: (1) solely based upon their respective supervisory capacities; and (2) regarding their responses or non-response to administrative grievances or complaints within either the BOP or USP-Lewisburg. Summary judgment was additionally granted in favor of the Remaining Defendants with respect to: (1) the claims for monetary damages against them in their official capacities; and (2) the allegations of deliberate indifference to a serious medical need; and (3) the assertions relating to the denial of Plaintiff's requests to be moved to another cell.

However, Remaining Defendants' request for summary judgment regarding the alleged use of excessive force while being extracted from his cell and the implementation of four point restraints by correctional staff was denied and their request for qualified immunity was dismissed without prejudice.

Presently pending is the Remaining Defendants' motion for summary judgment.  See Doc. 51.  The opposed motion is ripe for consideration.[2]

**Plaintiff's Claims**

With respect to the Remaining Defendants, the Complaint, provides that while Hill was being held in ambulatory restraints at USP-Lewisburg during the afternoon of June 22, 2010, Lieutenant

---

2.  Given the liberal treatment afforded pro se litigants the Court will deny Remaining Defendants' request that Plaintiff's opposing brief, statement of material facts, and declaration be precluded from consideration as untimely filed.

Hepner conducted a required two hour restraint check.[3]   See Doc. 1,
¶ 17.   In response to a question from Hepner, Plaintiff admits that
he indicated that he was ready to accept a cellmate and be released
from his restraints.   Hill acknowledges after being escorted to the
first floor shower room and removed from his restraints, he
informed Hepner that he had changed his mind would not accept a
cellmate.   See id.   Defendant Hepner allegedly became angry with
Plaintiff's change of heart and after making a verbal threat
returned approximately one hour later with a use of force team.

        The force team pulled Hill from the shower room.   During
this extraction, Plaintiff claims that the officers twisted his
neck and bent his back in a compromising position and placed him
back in ambulatory restraints.   His Complaint asserts that the
restraints (handcuffs, belly chain and leg irons) were maliciously
applied so tightly that Plaintiff was injured.

        It is next alleged that Hill was then purportedly dragged to
a Z Block cell where he was put in four point restraints and forced
to lay on his back in a spread eagle position on a steel and
concrete slab.   Hill adds that these restraints were again applied
too tightly.[4]   See id. at ¶ 18.   Lieutenant Carrasquillo conducted

---

3.   Remaining Defendants' pending motion includes an argument that
Plaintiff was not subjected to excessive force with regards to the
initial placement of Plaintiff in ambulatory restraints earlier
that same day.   However, the Complaint does not assert any claim
regarding Hill's initial placement in ambulatory restraints.

4.   Four point restraints involves placing an inmate in a supine
position on his bed and binding his hands in soft restraints to the
corners of his bed.   See Kee v. Hasty, 2004 WL 807071 1, n. 3.
(S.D. N.Y. April 14, 2004).

a mandated restraint check two hours later and purportedly disregarded Plaintiff's complaints of neck and back pain. Carrasquilla also refused to loosened Plaintiff's restraints or allow him to use the bathroom.  See id. at ¶ 19.  Due to that alleged inaction, Plaintiff asserts that he had to lay in his own waste.

Defendant Saylor conducted a restraint check the following day and likewise ignored Hill's complaints of pain, as well as the inmate's requests to have his restraints loosened and to use the bathroom.  Hepner conducted another restraint check several hours later  and likewise ignored Plaintiff's similar complaints and requests.  Subsequent restraint checks were also conducted by Defendants Edinger and McFadden who also refused to provide Plaintiff with any assistance.  After a total of 48 hours elapsed, Hill states that he was finally removed from the four point restraints.

The Complaint concludes that the use of force while being extracted from the shower room and his placement in four point restraints constituted cruel and unusual punishment.  Plaintiff also contends that Warden Bledsoe with the acquiescence of Regional Director Norwood approved the use of restraints.  Hill seeks declaratory and injunctive relief as well as compensatory and punitive damages.

## Discussion

Remaining Defendants argue that they are entitled to entry of summary judgment because: (1) the undisputed facts establish

4

that Plaintiff was not subjected to excessive use of force; (2) the use of four point restraints was within acceptable constitutional parameters; and (3) they are entitled to qualified immunity.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Excessive Force**

Remaining Defendants describe Plaintiff as having a history of assaultive and disruptive behavior.  Hill's poor conduct has resulted in his being placed in restraints more than twelve (12) times between January 28, 2009 - November 26, 2012.  They acknowledge that on the afternoon of June 22, 2010, Warden Bledsoe authorized the assembly of a use of force team after Plaintiff refused to submit to hand restraints for the purpose of being celled with another inmate.  It is also undisputed that earlier that same day a use of force team had been called to Hill's cell when the inmate had similarly refused to submit to hand restraints and be celled with another prisoner.

The summary judgment motion argues that since correctional

6

staff were able engage in successful confrontation avoidance which resulted with Plaintiff's agreement to be voluntarily placed in hand restraints, transferred to a cell, and thereafter placed in four point restraints without the use of force there is no basis for a claim that excessive force was applied against Plaintiff with respect to his extraction from the shower room.

It is well settled that a correctional officer's use of force in order to constitute cruel and unusual punishment, must involve the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

In a later ruling, the United States Supreme Court recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries. Hudson v. McMillian, 503 U.S. 1, 9 (1992). The core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.), cert. denied, 531 U.S. 821(2000); Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)(even a de minimis use of force, if repugnant to the conscience of mankind, may be constitutionally significant). As explained in Fuentes:

> Resolution of an Eighth Amendment claim
> therefore 'mandate[s] an inquiry into a
> prison official's state of mind.'  Two
> considerations define that inquiry.  We
> must first determine if the deprivation
> was sufficiently serious to fall within
> the Eighth Amendment's zone of
> protections.  If not, our inquiry is at an
> end.  In other words, we must determine if
> they were motivated by a desire to inflict
> unnecessary and wanton pain.  'What is
> necessary to establish an "unnecessary and
> wanton infliction of pain. . ." varies
> according to the nature of the alleged
> constitutional violation.'However, if the
> deprivation is sufficiently serious, we
> must determine if the officials acted with
> a sufficiently culpable state of mind.

Fuentes, 206 F.3d at 344.

In support of their argument, Remaining Defendants have
submitted videotape footage of the incident which allegedly
transpired at approximately 2:00 p. m. on June 22, 2010.  See Doc.
53, Exhibit 3.  This videotape evidence provides an uninterrupted
view of the entire incident underlying the excessive force during
extraction claim, from the assembly of the use of force team to the
placement of Hill in four point restraints.

The videotape confirms that on the afternoon at issue, a use
of force team was assembled to extract Plaintiff from a USP-
Lewisburg shower room.  Upon the arrival of the use of force team,
Plaintiff voluntarily agreed to be placed in restraints.

Both Hill and the involved correctional staff acted in a
calm and deliberative manner throughout the event at issue.  There
was no violent or unruly behavior by either Hill or the
correctional officers.  The extraction, placement in restraints,
and transfer to another cell were clearly accomplished without

8

incident.  There is no evidence to suggest Hill was injured or in pain at any juncture during the extraction/transfer.

Since Remaining Defendants have demonstrated that the undisputed facts establish that there was no use of excessive force via the submission of videotape evidence, the request for entry of summary judgment with respect to the claim that Plaintiff was subjected to excessive force during his June 22, 2010 afternoon shower room extraction, placement in restraints, and transfer to another cell will be granted.

**Four Point Restraints**

Plaintiff's other surviving claim asserts that there was no legitimate basis for his placement in four point restraints and that those restraints were applied too tightly and that he was kept in the restraints for an excessive period of 48 hours without being afforded access to a bathroom which caused him to have to lie in his own waste.

The Complaint states that Lieutenant Carrasquillo conducted an initial mandated restraint check and purportedly disregarded Plaintiff's complaints of neck and back pain, refused to loosened the inmate's restraints, and wouldn't allow him to use the bathroom.  Remaining Defendants Saylor, Hepner, Eddinger, and McFadden conducted subsequent restraint checks over the course of the next 48 hours and likewise ignored Hill's complaints of pain, and the inmate's requests to have his restraints loosened, and to use the bathroom.

9

This Court denied Defendants' prior dispositive motion on the basis that they had not provided competent details: (1) setting forth the reasons behind the decision to employ four point restraints in Hill's case; and (2) establishing why the need for four point restraints persisted for almost two days.  The Court also voiced its concern regarding Hill's claim that he was denied bathroom access and had to lie in his own waste.

In their pending summary judgment motion, Remaining Defendants describe Plaintiff as having an extensive history of more than twenty (20) significant disciplinary infractions including charges of assault on staff, possession of a weapons, and assault on inmates.  They also note that earlier in the day on June 22, 2010, employment of both a use of force team and ambulatory restraints had been approved for Plaintiff because he was displaying signs of imminent violence and was engaging in disruptive behavior.

According to Remaining Defendants, after being released from ambulatory restraints following the initial incident of June 22, 2010, Hill again began verbalizing threats of imminent violence which resulted in a second activation of a use of force team as well as a decision that Hill should be placed in four point restraints.  Specifically, due to Hill's history of violent behavior and his earlier manipulative behavior which resulted in his release from ambulatory restraints, Remaining Defendants explain that a decision was made to bypass the use of a second

10

round of ambulatory restraints on the same day and instead to employ four point restraints.

A declaration under penalty of perjury by USP-Lewisburg Attorney Advisor Michael Romano and supporting institutional records generally provide that Hill has a long history of institutional infractions some of which included violent behavior. See Doc. 62-3, Exhibit 1, ¶ ¶ 3-4. With respect to the decision to place Hill in four point restraints, Romano states although Hill "submitted to hand restraints ... [a]mbulatory restraints "were bypassed due to Hill's highly agitated state and recent history of manipulating restraints." Id. at ¶ 11.

Romano adds that the prisoner was placed in four point restraints and remained in said restraints for a period of less then forty-eight (48) hours. Every fifteen (15) minutes Plaintiff remained in four point restraints a visual check was conducted in accordance with BOP policy. In addition, a correctional lieutenant conducted a BOP mandated restraint check every two (2) hours to determine if Hill had regained a pattern of non-disruptive behavior which would warrant his release from the restraints.

Lieutenant Hepner has submitted a declaration under penalty of perjury wherein he states that he notified the Warden on the afternoon of June 22, 2010 that Plaintiff was for the second time that day refusing to be placed in hand restraints and accept a celllmate. Upon being notified of this latest situation, the Warden authorized four point restraints and bypassed ambulatory restraints "due to Hill's agitated state and recent attempts to

11

manipulate his being in ambulatory restraints." Doc. 62-3, Exhibit 4, ¶ 6.

Plaintiff admits that he changed his mind and was once again refusing to be celled with another prisoner. However, Hill asserts that he was not displaying imminent signs of violence as demonstrated by his agreement to be placed in hand restraints.[5] Rather, Hill argues that Hepner was angered by his change of mind and that the implementation of four point restraints was punitive.

With respect to the four point restraint related issues of bathroom access and complaints of pain from restraints which were too tight, Remaining Defendants' supporting brief generally acknowledges that during each two hour check, Hill's restraints were to be checked and he was to be offered opportunity to use the bathroom. See Doc. 62, p. 13. They also point out that there is no evidence in the record to support Plaintiff's assertion that he the tightness of the restraints resulted in cognizable wrist injuries.

Hepner's declaration provides that he conducted four restraint checks June 22, 2010 at 11:00 a.m. and noon[6] and June 23, 2010 at 10:00 a.m. and 2:00 p.m. The Lieutenant describes Plaintiff during each visit as not having regained control, agitated, and aggressive. During the two checks on June 23, 2010

---

5.  Remaining Defendants have submitted a copy of an incident report which provide that Hill was placed in four point restraints because he was displaying signs of imminent violence towards staff or other inmates.

6.  These checks were presumably of Plaintiff's ambulatory restraints as he was not placed in four points until mid-afternoon on June 22, 210.

Hepner indicates that Hill refused the use of toilet, water, and food.

A supporting declaration by Lieutenant Carrasquillo provides that prison records indicate said Defendant checked Hill's restraints six times while he was in four point restraints between June 22-24, 2010.  See Doc. 62-3, Exhibit 5.  Three of those checks (4:00, 6:00, and 10:00 p.m.) were conducted on June 22, 2010.  Plaintiff is described on that day as being either aggressive or combative at the time of all three visits.  The next day Carrasquillo conducted three more checks (4:00, 8:00, and 10:00 p.m.).  The Lieutenant again asserts that prison records indicate that Plaintiff was combative during all three inspections.  There is no indication by Carrasquillo as to whether he ever offered Hill opportunity to use the bathroom or responded to any complaints of pain/restraints being too tight during any of the six restraint checks conducted by that officer.[7]

Defendant Saylor has also submitted a declaration under penalty of perjury acknowledging that he conducted two restraint checks on June 23, 2010 at 8:00 a.m and 12:00 noon.  See id. at Exhibit 6.  Saylor states that he checked Hill's restraints during both visits and that the prisoner refused to speak during the morning visit and was combative at noon.  There is no claim by Saylor that he ever offered Hill opportunity to use the bathroom, or addressed any complaints of pain.

_____

7.  The Lieutenant does aver that he checked the restraints during each visit.

13

Lieutenant Edinger has also filed a declaration under penalty of perjury confirming that he also conducted a restraint check on June 23, 2010 at 6:00 p.m. and that Hill was combative. See id. at Exhibit 7. There is no assertion by Edinger as to whether he offered bathroom access or addressed any complaints of pain.

However, the declarations of Carrasquillo, Edinger, and Saylor contain no mention as to whether Plaintiff was offered opportunity to use the bathroom.  Likewise, the declarations do not indicate that the prisoner's alleged complaints of pain were addressed.

Plaintiff has submitted his own declaration indicating that he made numerous requests to use the bathroom and repeatedly voiced complaints of pain stemming from tight restraints during the two hour four point restraint checks which were ignored.

In addressing Defendants' prior dispositive motion, this Court noted that a non-precedential ruling, Camp v. Brennan, 54 Fed. Appx. 78, 81 (3d Cir. 2002) by the Third Circuit Court of Appeals concluded that the placement of four point restraints on a prisoner for two days while clothed only in a blanket did not constitute an Eighth Amendment violation.

Following Camp, the United States Supreme Court issued its decision in Hope v. Pelzer, 536 U.S. 730, 737-38 (2002) wherein it recognized that handcuffing an inmate to a hitching post for seven hours in a standing position, with his shirt off, subject to sunburn and scorching heat, without water or bathroom breaks while

14

subject to taunting by correctional officers presented an Eighth
Amendment violation.  It has been correctly noted that to the
extent that Camp conflicts with Hope, the Supreme Court's decision
is binding authority.  Zimmerman v. Schaffer, 654 F. Supp.2d 226,
249 (M.D. Pa. Aug. 17, 2009).

    In Womack v. Smith, 2011 WL 819558 * 11 (M.D. Pa. March 2,
2011), it was recognized that the initial use of restraints may be
characterized as an excessive force claim while the prolonged use
of restraints is properly analyzed under the deliberate
indifference standard.[8]  Based upon the evidence presented by
Defendants it does not appear that prison officials intended that
Hill undergo a lengthy restraint period.

    It is undisputed that Plaintiff was placed in four point
restraints with the approval of Warden Bledsoe on June 22, 2010 at
2:50 p.m. and remained restrained until June 24, 2010 at 10:00
a.m., a period of 43 not 48 hours.[9]

    The use of four point restraints is generally viewed as
being a measure of last resort.  See Williams v. Benjamin, 77 F.3d
756, 763  (4th Cir. 1996)(courts have approved the limited use of

---

8.  Womack concerned a twenty-six (26) day period of placement in
ambulatory restraints which are less restrictive then four point
restraints.

9.  Those records further  provide that the BOP's Regional Director
was given an update for each eight (8) hour time period Hill spent
in restraints as required by BOP policy.
    BOP Policy Statement § 552.24 requires that when a prisoner is
held in four point restraints more then eight (8) hours the Warden
of the institution must so notify the Regional Director by
telephone.  Additional notifications must be provided for each
ensuing eight (8) hour period of four point restraint.

15

four point restraints, chaining a prisoner to his bed in a spreadeagle position, as a last resort when other forms of prison discipline have failed).  This conclusion of being a measure of last resort is bolstered by the BOP special reporting requirements implicated whenever such restraints are undertaken.[10]

Remaining Defendants have provided this Court with general reasons behind the decision to employ four point restraints in Hill's case.  They claim that Plaintiff was displaying signs of imminent violence because he made a vocal threat.  This contention is arguably contradicted by Remaining Defendants' acknowledgment that Hill voluntarily submitted to being placed in hand restraints twice on the date in question.

Moreover, institutional records submitted by Remaining Defendants indicate with the exception of yelling one obscene remark and falsely indicating that he was willing to accept a cellmate Plaintiff was for the most part sitting at his desk or on his bed on the morning of the June 22, 2010.  See Doc. 22-2 p. 28.

It is also noted that Warden Bledsoe has not submitted a declaration explaining his reasons for authorizing the use of four point restraints.  Regional Director Norwood has likewise not submitted a declaration explaining his concurrence in the decision to employ four point restraints.  Third, the videotape evidence

_____

10.  In addition to the Regional Director reporting requirements previously discussed, correctional staff were also required per BOP policy to check Plaintiff every fifteen minutes.  See id. at p. 27. In addition a Lieutenant was required to conduct a restraint check every two hours.

submitted by the Remaining Defendants show that Plaintiff voluntarily consented to being placed in hand restraints and was not violent or otherwise disruptive immediately prior to placement in four point restraints.  Fourth, the videotape presented by Remaining Defendants of events which transpired during the morning of July 22, 2010 also does not depict Hill as being disruptive or otherwise unruly and that he again voluntarily consented to being placed in hand restraints.

Upon consideration of the conflicting material factual evidence presented by the parties, the use of four point restraints on Plaintiff could be concluded as wanton infliction of pain in violation of the Eighth Amendment.  See Zimmerman, 654 F. Supp.2d at 249.  In reaching this determination, this Court recognizes the potential that Plaintiff's behavior could have improved for the better once his actions were being recorded or because he was facing a physical encounter with the use of force team.  Moreover, this Court also agrees that the undisputed record clearly establishes that Hill was a prisoner with a significant history of institutional misconduct including acts of violence against staff and fellow prisoners.

However, it cannot be ignored that evidence which has been presented, especially videotapes, institutional logs, and Remaining Defendants' acknowledgment that Hill was not involved in any type of physical altercation on the relevant date could warrant a determination by a rational trier of act that the placement of Hill in four point restraints was not appropriate and was simply a

17

punitive response to Plaintiff's manipulative behavior.[11]   Second, there is also a material factual dispute as to Plaintiff's assertion that he was not released from his restraints to use the bathroom during the 43 hour period and had to lie in his own waste. Remaining Defendants have simply not provided the Court with competent evidence showing that Plaintiff was provided with bathroom access as mandated under BOP regulations.[12]

Since the Court has not been presented with any facts showing that the use of four point restraints was justified and non-excessive under the circumstances, the request for summary judgment will be denied.[13]

**Qualified Immunity**

Remaining Defendants also argue that they are entitled to qualified immunity.  This argument will be addressed solely with respect to the surviving four point restraint related claims.

Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court

───────────────

11.  Namely, punishment for Hill's deceiving Lieutenant Hepner into allowing him to shower by agreeing and to accept a cell mate but then changing his mind after showering.

12.  BOP regulations require that during each two hour restraint check the inmate must be afforded the opportunity to use the toilet unless the prisoner is actively resisting.

13.  This Court does agree with remaining defendants' contention that based upon the undisputed record there is no indication that Plaintiff suffered any injury due to having rstraints applied too tightly.

held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997). It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims. See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136. The second prong requires a determination as to whether the constitutional right at issue was clearly established. If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

19

Plaintiff's factual submissions, viewed in the light most favorable to him, shows that the Remaining Defendants violated his constitutional rights with respect to the use of the four point restraints.  Consequently, the first prong of Saucier is satisfied.  See Curley, 298 F.3d 271, 2002 WL 1774048 *18 ("a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.").

The second step of Saucier requires district courts "to determine whether the constitutional right was clearly established." Bennett, 274 F.3d at 136.  Under this analysis, "[i]f it would not have been clear to a reasonable officer *what the law required* under the facts alleged, he is entitled to qualified immunity." Id.; See also Ezenwa v. Gallen, 906 F. Supp. 978, 986 (M.D. Pa. 1995) (quoting Harlow, 457 U.S. at 818) (qualified immunity will shield a governmental official from liability if that official's conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'").  "A right is clearly established if it would be "clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Jones v. Jersey City, 2002 WL 1877036 *1 (3d Cir. Aug. 15, 2002)(quoting Saucier, 533 U.S. at 202).  This Circuit has also held that while governmental officials are not required to anticipate the development of new legal standards, they must apply general, well developed, legal principles. Three Mile Island, 747 F.2d at 144-45.

20

The constitutional duties with respect to the application of four point restraints by correctional officers were clearly established at the time of the alleged incident.  Since the facts when viewed in a light most favorable to Hill would establish that the purported conduct regarding use of four point restraints of the Remaining Defendants violated clearly established constitutional standards, under Saucier, they are not entitled to qualified immunity at the summary judgment stage.

However, as noted by the Third Circuit court of Appeals, an officer may still contend that he reasonably, but mistakenly, believed that his actions was justified by the circumstances as he perceived them; this contention however, must be considered at trial.  See generally, Bennett, 274 F.3d at 137.  An appropriate Order will issue.


                              S/Richard P. Conaboy
                                RICHARD P. CONABOY
                                United States District Judge



DATED: SEPTEMBER 19, 2013

21

IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DAVID E. HILL,                        :
                                      :
          Plaintiff                   :
                                      :
     v.                               :    CIVIL NO. 3:CV-11-1609
                                      :
HARLEY LAPPIN, ET AL.,                :    (Judge Conaboy)
                                      :
          Defendants                  :

_____

**ORDER**

     AND NOW, THIS 19th DAY OF SEPTEMBER, 2013, in accordance
with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:


          1.   Remaining Defendants' motion for summary judgment
               (Doc. 51) is **PARTIALLY GRANTED.**

          2.   Summary judgment is **GRANTED** in favor of the
               Remaining Defendants with respect to the claim
               that Plaintiff was subjected to excessive force
               during his June 22, 2010 afternoon cell
               extraction, placement in ambulatory restraints,
               and transfer to another cell.

          3.   The motion for summary judgment will be **DENIED**
               with regards to that there was no legitimate basis
               for Hill's placement in four point restraints and
               that he was kept in the restraints for an

22

excessive period without being afforded access to

a bathroom.



S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge