IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DAVID E. HILL,                       :
                                     :
          Plaintiff                  :
                                     :
     v.                              :    CIVIL NO. 3:CV-11-1609
                                     :
HARLEY LAPPIN, ET AL.,               :    (Judge Conaboy)
                                     :
          Defendants                 :

_____

## **MEMORANDUM**
## **Background**

David E. Hill (Plaintiff), an inmate presently confined at the High Security United States Penitentiary, Florence Colorado, Pennsylvania (USP-Florence) initiated this pro se civil rights action regarding events which purportedly transpired while Hill was previously confined at the United States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg). Remaining Defendants are Northeast Regional Director J. Norwood of the Federal Bureau of Prisons (BOP) and the following USP-Lewisburg officials: Warden B. Bledsoe; and Lieutenants W. McFadden, J. Hepner, M. Saylor, M. Edinger, and P. Carrasquillo.

By Memorandum and Order dated September 17, 2012, Defendants' motion for summary judgment was partially granted. See Doc. 40. Specifically, summary judgment was entered in favor of Defendants Harley Lappin; Physicians' Assistant I. Navarro; Nurse

B. Prince; and AHSA R. Parkyn.  Entry of summary judgment was also granted with respect to any claims against Remaining Defendants Norwood, and Bledsoe: (1) solely based upon their respective supervisory capacities; and (2) regarding their responses or non-response to administrative grievances or complaints within either the Federal Bureau of Prisons (BOP) or USP-Lewisburg.  Summary judgment was additionally granted in favor of the Remaining Defendants with respect to: (1) the claims for monetary damages against them in their official capacities; and (2) the allegations of deliberate indifference to a serious medical need; and (3) the assertions relating to the denial of Plaintiff's requests to be moved to another cell.

The request for summary judgment was denied with respect to the alleged use of excessive force while Hill was being extracted from his cell and the implementation of four point restraints by correctional staff.  In addition, Defendants' request for qualified immunity was dismissed without prejudice.

Remaining Defendants' second motion for summary judgment was partially granted by Memorandum and Order dated September 19, 2013. See Doc. 70.  Summary judgment was granted in favor of Remaining Defendants with respect to the claim that Plaintiff was subjected to excessive force: during a June 22, 2010 afternoon cell extraction; placement in ambulatory restraints; and transfer to another cell.  The motion for summary judgment was denied with regards to that there was no legitimate basis for Hill's placement

2

in four point restraints on June 22, 2010 and that he was kept in the restraints for an excessive period (43 hours) without being afforded access to a bathroom.

A third motion for summary judgment was dismissed without prejudice by this Court in order for the parties to address the applicability of Hope v. Pelzer, 536 U.S. 730, 737-38 (2002) and Young v. Martin, 801 F.3d 172 (3d Cir. 2014).

Presently pending is Remaining Defendants' fourth summary judgment motion. See Doc. 108. The motion argues that Warden Bledsoe, regional Director Norwood, and Lieutenant McFadden lacked personal involvement in the alleged constitutional misconduct; the placement of Hill in four point restraints was justified even with Hill displaying a calm demeanor at certain points during the day; the decision by various Defendants to continue the use of restraints for a period of 43 hours was constitutionally permissible; and Remaining Defendants are entitled to qualified immunity.

## Discussion

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the

3

outcome of the suit under the applicable law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. <u>Id</u>. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. <u>Saldana</u>, 260 F.3d at 232; <u>see also</u> <u>Reeder v. Sybron Transition Corp.</u>, 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. <u>Versarge v. Township of Clinton</u>, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Id</u>. (internal quotations omitted); <u>see also</u> <u>Saldana</u>, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." <u>Celotex</u>, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must

4

amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Personal Involvement**

Remaining Defendants initially argue that there is no basis for liability with respect to the claims asserted against BOP Regional Director J. Norwood, USP-Lewisburg Warden Bledsoe, and Lieutenant W. McFadden since there is no allegation of personal involvement by any of those officials in the purported constitutional deprivations.  See Doc. 118, p. 36.

Specifically, they assert that the undisputed record shows that McFadden " did not participate in the two planned uses of force against hill or the decision to place Hill in four point restraints, and he did not conduct any lieutenant checks on Hill." Id. at 36-37.  Second, they contend that Warden Bledsoe's involvement only consisted of "supervisory oversight" namely approval of a request to employ restraints on Hill and a subsequent 24 hour review of the use of restraints.  Id. At 37.  They note that the Warden was not present and did not witness the events at issue but merely relied upon the judgment of the reporting lieutenant.  Finally, it is argued that since Regional Director Norwood did not authorize or approve any action against Hill and simply received a report regarding the action taken against the prisoner, there is no basis for liability against said Defendant.

5

As previously discussed by this Court's earlier rulings in this matter, a plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v.Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

This Court previously concluded  that any attempt by Hill to establish liability against Defendants Norwood and Bledsoe based

6

upon either their respective supervisory capacities within either the BOP or USP-Lewisburg or their handling of his administrative grievances or complaints was insufficient.

The only allegation concerning Regional Director Norwood is Plaintiff's contention that said Defendant received a notification from Warden Bledsoe. In support of their pending summary judgment argument, Remaining Defendants have submitted a declaration under penalty of perjury by Regional Director Norwood and his accompanying job description. See Doc. 117-1, p. 22.  Norwood states that he provides executive oversight of sixteen federal correctional facilities located in seven states and oversees a staff of approximately 100 employees.  The Regional Director adds that in accordance with BOP policy he is provided with notice when an inmate is in restraints for more than eight hours and when a prisoner is put in four point restraints documentation regarding the reasons for the taking of that action are provided to his office.  Norwood adds that all decisions and reviews regarding placement of a prisoner in restraints and four point restraints and the duration of such restraint are made at the institutional level.

Based upon a review of the undisputed record, other then being listed as a Defendant the only factual assertion against Regional Director Norwood is that he was provided with a notice that Hill was in four point restraints for a period which exceeded eight hours.  There are no allegations that Norwood personally participated in any decision making regarding the use of restraints

7

on Hill and the Defendant has submitted a declaration establishing that he was not personally involved in any of the related decisions or periodic review of the challenged actions taken against Hill. Under the standards announced in Rode, since the only basis for liability against Norwood is that a notice was sent to the Defendant's office, entry summary judgment in favor of Defendant Norwood on the basis of lack of personal involvement is appropriate.

Lieutenant McFadden has also submitted a supporting declaration stating that he retired from USP-Lewisburg in 2012. See id. at p. 17.  McFadden adds that institutional records show that he was not personally involved with the events surrounding the placement of Hill in ambulatory restraints on June 22, 2010.  The records also establish that McFadden did not make the determination to put Hill on four point restraints and "I did not perform any of the restraint checks while the Plaintiff was in four point restraints."  Id. at 17-18.  Submitted copies of USP-Lewisburg records similarly provide no indication that McFadden was personally involved in the actions relating to the surviving claims.

Based upon an application of Rode to the undisputed facts, Lieutenant McFadden is likewise entitled to entry of summary judgment on the basis of non-personal involvement since he was not involved in the conduct underlying the surviving claims.

8

Hill alleges that Warden Bledsoe authorized the use of four point restraints and personally rejected Plaintiff's request to be transferred to another housing unit. The Complaint also claims that Bledsoe failed to implement procedures that would allow Hill to use the toilet, receive medical treatment, food, and water. See Doc. 1, ¶ 24. Previously submitted institutional records submitted by Defendants acknowledge that Plaintiff was placed in four point restraints with the approval of Warden Bledsoe on June 22, 2010 at 2:50 p.m. and remained restrained until June 24, 2010 at 10:00 a.m. See Doc. 22-2, p. 22.

Based upon a review of the Complaint and institutional records, and recognizing that Bledsoe may not have been physically present during the relevant time period the Plaintiff has nonetheless adequately alleged personal involvement by Defendant Bledsoe with respect to the claims relating to his placement in four point restraints. Specifically, since it was the Warden who personally authorized the use of four point restraints, Bledsoe's request for entry of summary judgment on the basis of lack of personal involvement will be denied.

**Four Point Restraints**

Remaining Defendants next assert that the decision to place Plaintiff in four point restraints which was admittedly made by Defendant Hepner and approved by Warden Bledsoe was lawful even if Hill's demeanor was calm at the time the restraints were applied. It is initially noted that in support of their argument, Remaining

9

Defendants partially rely on cases involving the use of ambulatory restraints. Since the employment of that measure is less severe that the imposition of four point restraints the Court finds that those decisions although relevant are not controlling.

As established by the Plaintiff's own deposition testimony, the inmate had a long history of institutional misconduct. The Court also recognizes that Hill had previously been placed in ambulatory restraints on multiple occasions for refusing to accept a cell mate and as such was aware that in order to be released from restraints he had to display a calm demeanor.

On June 22, 2010, Plaintiff refused an order to accept a cell mate and threatened violence against his proposed new cell mate. As a result, Hill was placed in ambulatory restraints. While still being held in ambulatory restraints later that same day, Lieutenant Hepner conducted a two hour restraint check. See Doc. 1, ¶ 17. When asked by Hepner if he was ready to accept a cellmate and be released from his restraints, Hill responded in the affirmative. After being escorted to the first floor shower room and removed from his restraints, Plaintiff acknowledges that he informed Hepner that he had changed his mind would not accept a cell mate. See id.

According to the Complaint, Hepner became angry with Plaintiff's change of mind/manipulative behavior and returned an hour later with a use of force team and the inmate was put in four point restraints. Correctional staff were able to engage in successful confrontation avoidance which resulted in Plaintiff's

agreement to be voluntarily placed in hand restraints, transferred to a cell, and thereafter placed in four point restraints without the use of force

In order to constitute cruel and unusual punishment, a correctional officer's use of force must involve the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

Use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries. Hudson v. McMillian, 503 U.S. 1, 9 (1992). Courts must resolve the issue of "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.), cert. denied, 531 U.S. 821(2000); Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)(even a de minimis use of force, if repugnant to the conscience of mankind, may be constitutionally significant). In Womack v. Smith, 2011 WL 819558 * 11 (M.D. Pa. March 2, 2011),[1] it was recognized that the initial use of restraints may be characterized as an excessive force claim while the prolonged use

---

1. Womack involved a physical altercation between a correctiojal officer and an inmate at USP-Lewisburg which resulted in an application of ambulatory restraints.

11

of restraints is properly analyzed under the deliberate indifference standard.[2]

This Court's September 19, 2013 Memorandum and Order noted that Camp v. Brennan, 54 Fed. Appx. 78, 81 (3d Cir. 2002), a non-precedential ruling by the Third Circuit Court of Appeals, concluded that the placement of four point restraints on a prisoner for two days while clothed only in a blanket did not constitute an Eighth Amendment violation.[3]  A subsequent United States Supreme Court decision, Hope v. Pelzer, 536 U.S. 730, 737-38 (2002), recognized that handcuffing an inmate in a non-emergency situation to a hitching post for seven hours in a standing position, with his shirt off, subject to sunburn and scorching heat, without water or bathroom breaks while subject to taunting by correctional officers presented an Eighth Amendment violation.  To the extent that Camp conflicted with Hope, the Supreme Court's decision was binding authority.  Zimmerman v. Schaffer, 654 F. Supp.2d 226, 249 (M.D. Pa. Aug. 17, 2009).[4]

In  Young v. Martin, 801 F.3d 172 (3d Cir. 2014), the Court of Appeals clarified that when reviewing claims involving the use of mechanical restraints under Hope district courts must analyze

---

2.  Womack concerned a twenty-six (26) day period of placement in ambulatory restraints which are less restrictive then four point restraints.

3.  Camp likewise regarded a situation where a prisoner "provoked a violent disturbance."  Id.

4.  Zimmerman addressed a 10 hour placement of an inmate who had been kicking and screaming in a restraint chair.

12

the case under the excessive force test.[5] Young also included a discussion as to the criteria which should be considered when reviewing the legality of a prolonged confinement in restraints. Specifically the Court stated that when reviewing claims involving the use of mechanical restraints courts should inquire as to whether prison officials were faced with an emergency situation and if the inmate was subdued prior to the use of restraints.

Remaining Defendants contend that Hope and Young differ from the present case in that neither dealt with a prisoner threatening to assault staff and inmates. However, Plaintiff has presented facts showing that it was refusal to accept a cell mate after indicating that he would do so which triggered the use of four point restraints as a punitive measure and that said comments were made hours before the imposition of restraints.

Four point restraints are viewed as being a measure of last resort. See Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996)(courts have approved the limited use of four point restraints, chaining a prisoner to his bed in a spreadeagle position, as a last resort when other forms of prison discipline have failed). This description of four point restraints being a measure of last resort is supported by the BOP special reporting

---

5. Young regarded the placement of a Pennsylvania state prisoner with mental health problems in a four point restraint chair for 14 hours.

13

requirements which are triggered whenever such restraints are undertaken.[6]

Remaining Defendants have submitted videotape footage of the underlying events.  See Doc. 53, Exhibit 3.  The videotape provides an uninterrupted view of the entire incident from the assembly of the use of force team to the placement of Hill in four point restraints.  The videotape confirms that on the afternoon at issue, a use of force team was assembled to extract Plaintiff from a USP-Lewisburg shower room.  When the use of force team arrived, Plaintiff voluntarily agreed to be placed in restraints.  Hill and the involved correctional staff acted in a calm and deliberative manner throughout the event at issue.  There was no violent or unruly behavior by either Hill or the correctional officers.  The extraction, placement in four point restraints, and transfer to another cell were clearly accomplished without incident.

Institutional records submitted by Remaining Defendants indicate with the exception of yelling one obscene remark and falsely indicating that he was willing to accept a cellmate Plaintiff was for the most part sitting at his desk or on his bed on the morning of the June 22, 2010.  See Doc. 22-2 p. 28.

It is apparent to this Court that Hill lied to manipulate his way out of placement in ambulatory restraints, conduct which was not viewed favorably by correctional staff.  Regardless of that

---

6.  Correctional staff are required per BOP policy to check a prisoner in four point restraints every fifteen minutes.  See id. at p. 27.  In addition a Lieutenant is required to conduct a restraint check every two hours.

behavior, on the date in question Hill twice consented to being placed in hand restraints and was not involved in any type of physical altercation. Based upon an application of the above standards, there are issues of disputed material fact as to whether the use of four point restraints, was required in this case.

As noted by this Court's prior rulings, like the scenario addressed in Hope, this was not an emergency situation, i.e. one where an inmate's behavior was out of control. As such, a rational trier of fact could conclude that the use of four point restraints on Plaintiff was punitive and constituted a wanton infliction of pain in violation of the Eighth Amendment. See Zimmerman, 654 F. Supp.2d at 249.

There is also a material factual dispute as to whether there was a continued need to keep Plaintiff in four points restraints for almost two days especially given the undisputed facts that inmates placed in such restraints must be monitored every fifteen minutes. The prolonged use along with the undisputed fact that Plaintiff was denied the use of a bathroom on multiple instances during the 43 hour period is also troubling.[7]

This Court agrees that Hill's deception of Lieutenant Hepner into allowing him to be released from ambulatory restraints by agreeing and to accept a cell mate but then changing his mind warranted punishment. However, there are clearly issues of material

---

7. It is noted that BOP regulations require that during each two hour restraint check the inmate must be afforded the opportunity to use the toilet unless the prisoner is actively resisting.

15

fact as to whether the punishment imposed, the use of four point restraints for 43 hours, was justified and non-excessive under the circumstances, the request for summary judgment will be denied.

**Qualified Immunity**

Remaining Defendants also argue that they are entitled to qualified immunity. Qualified immunity is an affirmative defense which must be pleaded by the defendant official. Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995). In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997). It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims. See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002).

The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136. The second prong requires a determination as to whether the constitutional right at issue was clearly established. If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

As previously discussed by this Court's September 19, 2013 Memorandum and Order, Plaintiff's factual submissions, viewed in the light most favorable to him, shows that the Remaining Defendants violated his constitutional rights with respect to the use of the four point restraints. Consequently, the first prong of Saucier is satisfied. See Curley, 298 F.3d 271, 2002 WL 1774048 *18 ("a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.").

The constitutional duties with respect to the need for and application of four point restraints by correctional officers were clearly established at the time of the alleged incident. Since the facts when viewed in a light most favorable to Hill would establish that the purported conduct regarding use of four point restraints of the Remaining Defendants violated clearly established

17

constitutional standards, under Saucier, they are not entitled to qualified immunity at the summary judgment stage.

However, as noted by the Third Circuit Court of Appeals, an officer may still contend that he reasonably, but mistakenly, believed that his actions was justified by the circumstances as he perceived them; this contention however, must be considered at trial. See generally, Bennett, 274 F.3d at 137. An appropriate Order will issue.

>S/Richard P. Conaboy
>Richard P. Conaboy
>United States District Judge

DATED: SEPTEMBER 30, 2016