# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID E. HILL, | No. 3:11-CV-01609 |
| Plaintiff, | (Senior Judge Rambo) |
| v. | |
| HARLEY LAPPIN, et al., | |
| Defendants. | |

## MEMORANDUM OPINION

**I.    BACKGROUND**

David E. Hill, a federal inmate, filed this *Bivens*[1] action alleging that numerous defendants violated his rights by placing him in four-point restraints for approximately 43 hours. (Doc. 1). District Judge Richard P. Conaboy previously granted in part Defendants' motion for summary judgment, but denied that motion as to Defendants B. Bledsoe, Lt. J. Hepner, Lt. M. Saylor, Lt. M. Edinger, and Lt. P. Carrasquilla (collectively "Remaining Defendants") after concluding that genuine issues of material fact existed as to whether Remaining Defendants' actions were justified by a legitimate penological interest. (Docs. 124, 125).

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Specifically, Judge Conaboy noted that, on the morning Hill was placed in four-point restraints, he had threatened to harm any cell mate with whom he was placed and, as a result of that refusal, was placed in ambulatory restraints. (Doc. 124 at 9-10). Hill agreed to accept a cell mate but, after he was released from ambulatory restraints, again refused a cell mate, threatened staff and other inmates, and allegedly displayed signs of imminent violence. (*Id.*; Doc. 70 at 12). Videotape of the incident demonstrated that Hill was cooperative, calm, and deliberative, and was placed in restraints without incident or violence. (Doc. 124 at 14-15). Notwithstanding Defendants' allegations that Hill threatened others and displayed signs of imminent violence, Judge Conboy concluded that Hill's indisputably calm and cooperative demeanor undercut Defendants' claims that the use of four-point restraints was necessary, particularly since "this was not an emergency situation, i.e. one where an inmate's behavior was out of control." (*Id.* at 15).

Furthermore, Defendants asserted that, after Hill was placed in four-point restraints, he was uncooperative, agitated, and aggressive, which necessitated the continued use of such restraints for approximately 43 hours from June 22, 2010, until June 24, 2010 ("Relevant Period"). (Doc. 70 at 12-14). However, Judge Conaboy determined that a genuine issue of material fact existed as to whether Hill presented such a threat that he needed to be maintained in four-point restraints for so long with only one bathroom break. (*Id.* at 17-18; Doc. 124 at 15-16).

2

The matter was later assigned to this Court, which denied Hill's motion for summary judgment and scheduled the matter for trial. (Docs. 152, 153). Hill has filed two motions *in limine* seeking to prevent Remaining Defendants from referencing during trial Hill's: (1) past convictions or facts underlying those convictions; (2) prison misconduct history, including any reference to alleged acts of misconduct or threats made between June 22, 2010, and June 24, 2010, for which Hill was not found guilty; (3) places of incarceration, housing units, or restrictions during confinement; and (4) length of current sentence. (Docs. 161, 162, 171, 172). Hill contends that any such evidence constitutes improper character evidence under Fed. R. Evid. 608(b) and, in any event, should be excluded under Fed. R. Evid. 403. (Doc. 162 at 3).

Remaining Defendants in turn contend that evidence of Hill's disciplinary history, conduct during the Relevant Period, and placement in the special management unit ("SMU") are admissible under Rule 404(b)(2). (Doc. 165 at 4-9; Doc. 173 at 3-9). They assert that such evidence "is critical to the issue of the knowledge and intent of Defendants placing and continuing Hill in restraints for a legitimate peneological [sic] interest." (Doc. 165 at 6; *see id.* at 7-9). Remaining Defendants do not contest Hill's other requests, and explicitly state that "are not seeking the introduction of evidence of a conviction." (*Id.* at 5-6; Doc. 173 at 6).

## II. DISCUSSION

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Nevertheless, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

"Rule 404(b) directs that evidence of prior bad acts be excluded—*unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose." *United States v. Repak*, 852 F.3d 230, 240 (3d Cir. 2017) (internal quotation marks omitted). "Because Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts evidence has the burden of demonstrating the evidence's applicability." *Id.* at 241 (brackets and internal quotation marks omitted).

> Admissibility under Rule 404(b) requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction.

*Id.*

Remaining Defendants have satisfied the first step by identifying a non-propensity purpose for introducing evidence of Hill's disciplinary hearing and

4

placement in SMU. Specifically, Remaining Defendants seek to introduce such evidence to show their states of mind regarding their perception of Hill's threat level and the measures needed to restrain Hill in order to protect themselves and other inmates. (Doc. 165 at 6-7). "'State of mind' or 'mental state" is not one of the enumerated exceptions to the general rule of exclusion of other-act evidence, but nonetheless is a permissible non-propensity purpose." *Collins v. Bledsoe*, No. 3:12-CV-2244, 2018 WL 6617693, at *3 (M.D. Pa. Dec. 18, 2018).

With regard to the second step, Remaining Defendants must demonstrate that the "proffered evidence . . . fit[s] into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *Repak*, 852 F.3d at 243 (internal quotation marks omitted). "This chain must be articulated with careful precision because, even when a non-propensity purpose is at issue in a case, the evidence offered may be completely irrelevant to that purpose, or relevant only in an impermissible way." *Id.* (brackets and internal quotation marks omitted.

The Court concludes that—on this record—Remaining Defendants have established the relevance of Hill's placement in SMU and his conduct during the Relevant Period to their states of mind, but have not established the relevance of Hill's disciplinary history. Importantly, Hill's claims must be evaluated under the standard applicable to excessive force claims, *Young v. Martin*, 801 F.3d 172, 180

(3d Cir. 2015), and "the pivotal inquiry in reviewing an inmate's § 1983 claim for excessive force is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (internal quotation marks omitted). Relevant to the inquiry into the officers' intent is, inter alia, "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them." *Id.*

As to Hill's status as an SMU inmate, Remaining Defendants have proffered that they "would only present evidence of their personal knowledge that Hill was a high security inmate who met any of the criteria for designation to the SMU to the extent such knowledge informed their decisions in managing Hill's custody." (Doc. 165 at 6). This information—Remaining Defendants' knowledge that Hill had difficulty conforming to prison rules—is directly relevant to the perceived risk that he posed and whether such risk justified placing and maintaining him in four-point restraints. Similarly, Hill's behavior prior to and during his placement in restraints—specifically his threats of violence and refusal to comply with directives—is directly relevant to the threat perceived by Remaining Defendants. Thus, Hill's status as being confined in the SMU and his behavior during the Relevant Period are relevant to Remaining Defendants' state of mind.

However, on this record the Court cannot conclude that Hill's disciplinary history is relevant. Remaining Defendants assert that they "will testify that this was the SMU, and Hill was designated there because he met any of the criteria for SMU placement and they knew SMU inmates had lengthy disciplinary histories." (*Id.* at 7-8). This proffer merely explains how an inmate's placement in SMU would be relevant, not how Hill's specific history of misconduct is relevant. Certainly, to the extent that Remaining Defendants both knew of and relied upon Hill's disciplinary history, such information would be important in determining the extent of the threat that Remaining Defendants reasonably perceived from Hill.

However, Remaining Defendants have made no proffer that they would testify that they actually knew Hill's disciplinary history and relied upon that history in determining whether he should be placed—and maintained—in four-point restraints. To the contrary, the evidence submitted by Defendants in prior motions for summary judgment rely on other grounds to justify placing Hill in four-point restraints—Hill's agitated state and his "recent attempts to manipulate his being in ambulatory restraints." (Doc. 62-3 at 122; *see id.* at 8, Doc. 117 ¶¶ 37, 56-57, 59, 72, 82, 84 86, 88, 90, 93, 96, 99, 100, 102, 103). "As defendants have proffered no such awareness or reliance, [the Court] will conditionally grant [Hill's] motion *in limine* with the caveat that defendants may renew their Rule 404(b)(2) argument to the extent they knew of and relied upon" Hill's disciplinary history at the time of the incident.

*Collins*, 2018 WL 6617693, at *3. Thus, the analysis will proceed only as to Hill's status as an SMU inmate and his conduct during the Relevant Period.

Applying the third step to Hill's placement in the SMU, it is clear that such placement has some probative value. Remaining Defendants note that, to be placed in SMU, inmates must meet one of several criteria that implicate a general inability to conform to prison rules and regulations. (Doc. 165 at 4). Knowledge that Hill was an unusually difficult prisoner is probative of how Remaining Defendants interpreted his behavior, specifically, whether they believed he would follow through on his threats of violence.

Balanced against this is the prejudice that knowledge of Hill's status as an SMU inmate may bring. Certainly, there is some danger that a jury will hold Hill's history of insubordination against him. Although the risk of prejudice is not insubstantial, it is mitigated to some extent by the fact that Remaining Defendants cannot at this point delve into Hill's misconduct history or any specific reasons as to why Hill was placed in the SMU. Moreover, if requested, the Court will issue an appropriate limiting instruction as required by step four of the Rule 404(b) admissibility test, which will further limit any prejudice. Although not trivial, the prejudice is not so great that the Court may conclude that the probative value is "substantially outweighed" by such prejudice. *See Repak*, 852 F.3d at 247 (noting the "presumption of admissibility" and that evidence may not be excluded "merely

because its unfairly prejudicial effect is greater than its probative value" (internal quotation marks omitted)). Consequently, the Court will permit evidence of Hill's status as an SMU inmate.

Similarly, Hill's conduct during the Relevant Period is extremely probative of "the extent of the threat to the safety of staff and inmates" reasonably perceived by Remaining Defendants. *Ricks*, 891 F.3d at 480. To the extent that Hill made threats of violence against other inmates or prison staff, such threats would obviously play a large role in assessing whether Hill was a danger and what type of restraint was necessary. (Doc. 173 at 2, 9). Indeed, Hill's actions prior to and during his restraint will be central at trial, and the outcome will likely largely hinge upon whether the jury credits Remaining Defendants' assessment of Hill's conduct or whether they believe the restraints were employed without legitimate reason, as Hill did not pose a threat. Given the highly probative nature of this information, any risk of prejudice is tolerable under a Rule 403 analysis. *See United States v. Foster*, 891 F.3d 93, 110 (3d Cir. 2018) ("When evidence is highly probative, even a large risk of unfair prejudice may be tolerable" (Brackets and internal quotation marks omitted)). Finally, the Court will issue an appropriate limiting instruction if requested. Therefore, evidence of Hill's conduct during the Relevant Period will be permitted.

## III. CONCLUSION

Remaining Defendants concede that they will not inquire into Hill's prior criminal convictions, and do not contest Hill's request that the Court exclude mention of the facts underlying his past convictions, places of incarceration, length of current sentence, or restrictions during confinement. Hill's motions *in limine* will therefore be granted as to those issues. Remaining Defendants have not proffered the required awareness of, or reliance upon, Hill's disciplinary history to warrant introducing such history as evidence at trial, and Hill's motions *in limine* will be conditionally granted as to his disciplinary history. Finally, Hill's motions *in limine* will be denied with respect to (1) his status at the time of the incident as an SMU inmate and (2) his conduct during the Relevant Period.

An appropriate Order follows.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: June 25, 2019