IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID E. HILL, | : | |
|     Plaintiff | : | |
| | : | No. 3:11-cv-1609 |
| v. | : | |
| | : | (Judge Rambo) |
| HARLEY LAPPIN, *et al.*, | : | |
|     Defendants | : | |

## MEMORANDUM

This matter is before the Court pursuant to *pro se* Plaintiff David E. Hill ("Plaintiff")'s various pretrial motions (Doc. Nos. 241, 243, 245, 250, 252, and 262), the responses thereto filed by Defendants Bledsoe, Hepner, Saylor, Edinger, and Carrasquillo (Doc. Nos. 273, 275, 276, and 277). All motions are ripe for disposition.[1]

## I. RELEVANT PROCEDURAL BACKGROUND

Plaintiff, who is currently incarcerated at the United States Penitentiary in Florence, Colorado ("USP Florence"), initiated the above-captioned action on

---

[1] While Plaintiff has not filed any reply briefs, the Court notes that it is "under no obligation to refrain from considering Plaintiff's motion[s] until he file[s] a reply brief." *King v. Mansfield Univ. of Pa.*, No. 1:11-cv-1112, 2015 WL 871693, at *3 (M.D. Pa. Feb. 27, 2015). The Local Rules of this Court make clear that the Court has unlimited authority to decide a motion before the expiration of the typical briefing schedule. *See* M.D. Pa. L.R. 7.6 (noting that "[n]othing in this rule shall be construed to limit the authority of the [C]ourt to grant any motion before expiration of the prescribed period for filing a brief in opposition"). The Court finds that the issues have been adequately briefed in Plaintiff's briefs in support as well as Defendants' responses such that any replies by Plaintiff "would [not] have any material impact" on the Court's decision. *See Witasick v. Minn. Mut. Life Ins. Co.*, No. 12-3474, 2015 WL 758316, at *1 n.3 (D.N.J. Feb. 23, 2015).

August 29, 2011 by filing a complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. No. 1.) After several rounds of motions, the only remaining Defendants were Bledsoe, Hepner, Saylor, Edinger, and Carrasquillo (collectively, "Defendants"), and the only remaining claims were

> (1) whether the decisions to place [Plaintiff] into four-point restraints on the afternoon of June 22, 2010, were based upon a desire to punish him for manipulative behavior or for a legitimate penological reason or reasons; and (2) whether [Plaintiff] was not released from his restraints to use the bathroom during the 43 hour period when he was in four-point restraints and was allegedly forced to lie in his own waste.

(Doc. No. 151.)[2] Jury selection and trial are scheduled to begin on May 11, 2020. (Doc. No. 237.) In an Order dated November 14, 2019, the Court directed that any

---

[2] This case was previously assigned to the Honorable Richard P. Conaboy, who, in denying the motion for summary judgment as to the remaining Defendants, noted that on the morning of the date on which Plaintiff was placed in four-point restraints, he had threatened to harm any cell mate with whom he was placed and, as a result, was placed in ambulatory restraints. (Doc. No. 124 at 9-10.) Plaintiff subsequently agreed to accept a cell mate but, after he was released from ambulatory restraints, again refused, threatened staff and other inmates, and allegedly displayed signs of imminent violence. (*Id.*; Doc. No. 70 at 12.) Videotape of the incident showed that Plaintiff was calm, cooperative, and deliberative, and was placed in restraints without incident or violence. (Doc. No. 124 at 14-15.) Judge Conaboy concluded that Plaintiff's calm and cooperative demeanor undercut Defendants' claims that the use of four-point restraints was necessary, particularly because "this was not an emergency situation, i.e. one where an inmate's behavior was out of control." (*Id.* at 15.) Judge Conaboy also determined that a genuine issue of material fact existed as to whether Plaintiff presented such a threat that he needed to be maintained in four-point restraints for approximately 43 hours, from June 22-24, 2010, with only one bathroom break. (*Id.* at 15-16.)

dispositive motions be filed by December 31, 2019 and that any motions *in limine* be filed by January 31, 2020.³ (*Id.*)

## II. DISCUSSION

### A. Plaintiff's Motion to Compel (Doc. No. 241) and Motion for Discovery Sanctions (Doc. No. 243)

Plaintiff has filed a motion to compel Defendants "to disclose the video footage of Plaintiff being held in four-point restraints from the camera feed in the room where Plaintiff was being held in Z-block from June 22, 2010 through June 24, 2010." (Doc. No. 241.) In response, Defendants have provided a declaration

---

³ Jury selection and trial were initially scheduled to begin on July 29, 2019. (Doc. No. 153.) In preparation for that trial, Plaintiff filed two (2) motions *in limine*, substantially identical to the ones currently pending before the Court. (Doc. Nos. 161, 171.) In a Memorandum and Order dated June 25, 2019, the Court, inter alia, granted Plaintiff's motions with respect to any evidence related to his prior criminal convictions and the underlying facts, his places of incarceration, the length of his current sentence, and any restrictions during confinement. (Doc. Nos. 175, 176.) The Court also conditionally barred Defendants from introducing evidence of Plaintiff's disciplinary history, but indicated that they would be permitted to introduce evidence that Plaintiff was confined to the Special Management Unit ("SMU") during the relevant period and evidence related to his conduct between June 22-24, 2010, but only to the extent that they knew or, or relied upon, that information in determining whether to maintain Plaintiff in four-point restraints. (*Id.*)
   On July 19, 2019, the Court received a document titled "Petitioner's Motion for Self-Dismissal Pursuant to Federal Rules, Civil Procedure, Rule 41(a)(1)" and signed by "Dave Hill." (Doc. No. 206.) In an Order entered that same day, the Court dismissed the above-captioned case with prejudice and directed that Plaintiff be returned to his original place of incarceration. (Doc. No. 208.) Subsequently, Plaintiff filed several motions for relief under Rules 59(e) and 60(b), asserting that he was not the one that had filed the motion for self-dismissal. (Doc. Nos. 212, 213, 214, 217.) After the Government responded that its investigation into the matter proved "to be inconclusive in determining who authored and submitted the Rule 41(a) motion to the Court" (Doc. No. 223 at 9), the Court, in an Memorandum and Order dated October 17, 2019, granted Plaintiff's Rule 59(e) motion, reopened the case, and vacated its July 19, 2019 Order dismissing this action with prejudice (Doc. Nos. 227, 228).

3

from J. Page, a Senior Officer Specialist at USP Lewisburg, indicating that such video footage does not exist because there was no video monitoring equipment inside cell Z 024, the cell in which Plaintiff was placed in restraints. (Doc. No. 275-1 at 3; Doc. No. 275 at 3-4.) The Court "cannot compel the production of things that do not exist. Nor can the [C]ourt compel the creation of evidence by the parties who attest that they do not possess the material sought by an adversary in litigation." *Amfosakyi v. Frito Lay*, No. 1:11-cv-651, 2011 WL 5593133, at *3 (M.D. Pa. Nov. 17, 2011). Accordingly, Plaintiff's motion to compel (Doc. No. 241) will be denied.

In his motion to compel, Plaintiff asks that the Court sanction Defendants monetarily, in the amount of $750.00, for their failure to disclose the requested video. (Doc. No. 242 at 4.) Plaintiff has also filed a motion for discovery sanctions, asking that the Court strike or exclude at trial any testimony from Defendants "concerning the period Plaintiff was being held in four-point restraints from June 22, 2010 through June 24, 2010 and strike certain memoranda and exhibits from Defendants. (Doc. No. 244 at 2.) As noted above, video footage from inside the cell does not exist. Moreover, Defendants aver that they have provided Plaintiff video of Plaintiff being placed in ambulatory restraints on June 22, 2010, and a video of him being placed in four-point restraints on that same date. (Doc. No. 275 at 5; Doc. No. 275-1 at 4.) Nothing before the Court demonstrates that Defendants have

4

acted in bad faith and have willfully disregarded discovery deadlines and orders. *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 97 n.3 (3d Cir. 2008). Accordingly, Plaintiff's motion for discovery sanctions (Doc. No. 243) will be denied.

### B. Plaintiff's Motion for Leave to Call or Add a Witness or Expert Witness (Doc. No. 245)

Plaintiff has also filed a motion for leave to call Disciplinary Hearing Officer ("DHO") S. Beicker-Gallegos, an employee at USP Florence, as a witness in this matter. (Doc. No. 245.) Plaintiff maintains that she "has been familiarized with the BOP's inmate discipline process and will be able to explain to the jury how the inmate discipline process is carried out in the BOP for staff issuing an incident report." (Doc. No. 246 at 3.) According to Plaintiff, Beicker-Gallegos' testimony will "call into question Lt. Hepner's credibility before the jury." (*Id.*) He asserts that she is "both a lay and expert witness and will be able to render her opinion evidence about this situation concerning the disciplinary process." (*Id.* at 4.) Plaintiff has also submitted a letter requesting that the Clerk of Court issue a subpoena for Beicker-Gallegos. (Doc. No. 254.) In response, Defendants contend that Plaintiff's motion should be denied because Plaintiff failed to provide an expert report, the incident report issued to Plaintiff was never processed, Beicker-Gallegos has no personal information regarding the events at issue, and this Court has no jurisdiction over Beicker-Gallegos. (Doc. No. 276.)

5

The Federal Rules of Evidence provide "that a qualified expert witness may testify to assist the trier of fact if his testimony is based on sufficient facts or data and is the product of reliable principles and methods, and if the expert applied those principles and methods reliably to the facts of the case." *Thomas & Betts Corp. v. Richards Mfg. Co.*, 342 F. App'x 754, 760 (3d Cir. 2009) (citing Fed. R. Evid. 702). Here, Defendants are correct that Plaintiff has failed to provide an expert report, prepared and signed by Beicker-Gallegos, as required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Moreover, because the incident report issued to Plaintiff was never processed, and because Beicker-Gallegos has no personal information concerning the relevant events, the Court concludes that her proposed testimony is unnecessary for the trial scheduled in this matter. The Court agrees with Defendants that testimony concerning the processing of incident reports and BOP discipline at USP Lewisburg can be provided by Defendant Hepner and DHO Chambers, who is employed at USP Lewisburg and has reviewed records related to this matter. (Doc. No. 276 at 4-5.)

As noted above, Plaintiff has requested that the Court subpoena Beicker-Gallegos to appear at the trial scheduled in this matter. The Rules of Civil Procedure provide that a subpoena commanding a person to attend a trial may only be issued "within 100 miles of where the person resides, is employed, or regularly transacts

business in person" or "within the state where the person resides, is employed, or regularly transacts business in person" if the person is a party or party's officer or "is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A)-(B). Plaintiff asserts that Beicker-Gallegos is located in Florence, Colorado, well more than 100 miles from this Court. Moreover, even if the Court were to grant Plaintiff's request to issue a subpoena to have Beicker-Gallegos appear as a witness, Plaintiff has not demonstrated that he has the means to pay all costs associated with a witness's appearance. *See* Fed. R. Civ. P. 45(b)(1); *see also* 28 U.S.C. § 1821(b), (c)(1); *Hilton v. Klem*, No. 3:06-cv-2136, 2007 WL 3244707, at *1 (noting that plaintiffs who have been granted *in forma pauperis* status pursuant to 28 U.S.C. § 1915 are "nevertheless responsible for any and all costs associated with the subpoenas"). Accordingly, the Court will deny Plaintiff's motion for leave to call or add a witness or expert witness (Doc. No. 246) as well as his request for a subpoena (Doc. No. 254).

    C.    **Plaintiff's Motions *in Limine* (Doc. Nos. 250, 252, 262)**

Plaintiff has filed three motions *in limine*, seeking to prevent Defendants from referencing the following during trial: (1) his past arrests, convictions, and the facts underlying those convictions; (2) the length of his sentence; (3) prison misconduct history, including any alleged misconduct during the June 22-24, 2010 incident at

7

issue for which he was found not guilty; (4) number of times he has been incarcerated; (5) places of incarceration, types of housing units, levels of custody, or other restrictions during confinement; and (6) any prior or subsequent placement in the Special Management Unit ("SMU") or administrative custody before and after June 22-24, 2010. (Doc. Nos. 250, 252, 262.) Plaintiff argues that any such evidence constitutes improper character evidence under Rule 608(b) of the Federal Rules of Evidence and, in any event, should be excluded under Rule 403 of the Federal Rules of Evidence. (Doc. Nos. 251, 253, 263.) Defendants, however, maintain that the Court "should permit [them] to present limited evidence of [Plaintiff's] disciplinary history in the form of Defendant Hepner's recollection and the statements on the two videos preceding each use of force on June 22, 2010." (Doc. No. 277 at 8.) Defendants further assert that they "should be permitted to testify as to the purpose of the SMU at USP Lewisburg, the designation criteria for inmates such as [Plaintiff], and how that purpose and criteria affected their decisions with regard to [Plaintiff] on the dates at issue." (*Id.* at 8-9.) Defendants do not contest Plaintiff's other requests. Accordingly, the Court will grant Plaintiff's motions *in limine* with respect to evidence regarding Plaintiff's past arrests, convictions, and the facts underlying those convictions; the length of Plaintiff's sentence; the number of times Plaintiff has been incarcerated; his places of incarceration; other restrictions during

confinement; and any placements in the SMU or administrative custody after the events of June 22-24, 2010.

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Nevertheless, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Rule 404(b) directs that evidence of prior bad acts be excluded—unless the proponent can demonstrate that the evidence is admissible for a non-propensity purpose." *United States v. Repak*, 852 F.3d 230, 240 (3d Cir. 2017) (internal quotation marks omitted). "Because Rule 404(b) is a rule of general exclusion, the party seeking to admit other-acts evidence has the burden of demonstrating the evidence's applicability." *Id.* at 241 (brackets and internal quotation marks omitted).

> Admissibility under Rule 404(b) requires the satisfaction of four distinct steps: (1) the other-acts evidence must be proffered for a nonpropensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the [party against whom it will be offered]; and (4) if requested, the other-acts evidence must be accompanied by a limiting instruction.

*Id.*

9

Defendants have satisfied the first step by identifying a non-propensity purpose for introducing evidence of Plaintiff's disciplinary history and his placement in the SMU. Specifically, Defendants seek to show their states of mind regarding their perception of Plaintiff's threat level as well as the measures required to restrain him to protect themselves and other inmates. (Doc. No. 277 at 6-7.) As the Court has previously noted, "'[s]tate of mind' or 'mental state' is not one of the enumerated exceptions to the general rule of exclusion of other-act evidence, but nonetheless is a permissible non-propensity purpose." *Collins v. Bledsoe*, No. 3:12-cv-2244, 2018 WL 6617693, at *3 (M.D. Pa. Dec. 18, 2018).

With respect to the second step, Defendants must demonstrate that the "proffered evidence . . . fit[s] into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *Repak*, 852 F.3d at 243 (internal quotation marks omitted). "This chain must be articulated with careful precision because, even when a non-propensity purpose is at issue in a case, the evidence offered may be completely irrelevant to that purpose, or relevant only in an impermissible way." *Id.* (brackets and internal quotation marks omitted). Here, Plaintiff's claims must be evaluated under the standard applicable to excessive force claims, *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015), and the "pivotal inquiry in reviewing an inmate's § 1983 claim for excessive

force is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (internal quotation marks omitted). Relevant to the inquiry into the officers' intent is, *inter alia*, "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them." *Id.*

With respect to Plaintiff's status as a SMU inmate, Defendants have proffered that "[t]he criteria for the types of conduct that can result in inmates being designated to the SMU at USP Lewisburg is relevant to the state of mind of the Defendants at the time of their alleged conduct." (Doc. No. 277 at 7.) They maintain that they are "all expected to testify at the time of trial that the purpose of the SMU and the criteria for inmates to be designated to the SMU were considerations in how they made their decisions to manage [Plaintiff] on the dates at issue." (*Id.*) The Court has already noted that this information—Defendants' knowledge that Plaintiff had difficulty conforming to prison rules—is directly relevant to the perceived risk he posed and whether such risk justified placing and maintaining him in four-point restraints. Likewise, Plaintiff's behavior prior to and during his placement in restraints—specifically his threats of violence and refusal to comply with directives—is directly relevant to the threat perceived by Defendants. Therefore, Plaintiff's status as a

11

SMU inmate and his behavior during the relevant time are relevant to Defendants' state of mind.

With respect to Plaintiff's disciplinary history, Defendants have proffered videos recordings of staff, including Defendant Hepner, preparing to place Plaintiff in ambulatory restraints and, later, in four-point restraints. Defendant Hepner personally knew Plaintiff's disciplinary history, including assaults, refusing orders, fighting, threatening bodily harm, possession of a dangerous weapon, and engaging in sexual acts. (Doc. No. 277 at 7; *see also* Doc. No. 273.) In the videos, Defendant Hepner proffers that Plaintiff's disciplinary history was relied upon when making the decision that Plaintiff should be placed and maintained in four-point restraints. Thus, the Court concludes that Plaintiff's disciplinary history is also relevant to Defendants' state of mind. *See Womack v. Smith*, No. 1:06-cv-2348, 2012 WL 1245752, at *5 (M.D. Pa. Apr. 13, 2012) (concluding that inmate plaintiff's disciplinary history was relevant to the extent that it influenced the defendants' decisions regarding use of restraints).

Applying the third step to Plaintiff's placement in the SMU and his disciplinary history, it is clear that such evidence has some probative value. Defendants indicate that their "anticipated testimony concerning the significance of [Plaintiff] being a SMU inmate and the unique management concerns for such

inmates is critical to the issue of the knowledge and intent of Defendants placing and continuing [Plaintiff] in restraints for a legitimate penological interest." (Doc. No. 277 at 8.) Knowledge of Plaintiff's status and his disciplinary history is probative of how Defendants interpreted his behavior—specifically, whether they believed Plaintiff would follow through on his threats of violence.

On the other hand, the Court acknowledges the prejudice that knowledge of Plaintiff's status and his disciplinary history may bring. There is certainly some danger that a jury will hold Plaintiff's history of insubordination against him. *See Womack*, 2012 WL 1245752, at *5 (acknowledging same). If requested, however, the Court will issue an appropriate limiting instruction as required by step four of the Rule 404(b) admissibility test, which will further limit any prejudice. While not trivial, the prejudice is not so great that the Court may conclude that the probative value is "substantially outweighed" by such prejudice. *See Repak*, 852 F.3d at 247 (noting the "presumption of admissibility" and that evidence may not be excluded "merely because its unfairly prejudicial effect is greater than its probative value").

The Court notes, however, that Defendants characterize Plaintiff's disciplinary history as "extensive." (Doc. No. 277 at 7.) An explanation of Plaintiff's entire disciplinary history prior to relevant time period "will unduly delay trial, waste time and have the potential to confuse the jury from the relevant issues."

*Womack*, 2012 WL 1245752, at *5. Consequently, the Court will permit evidence of Plaintiff's status as a SMU inmate, as well as his disciplinary history **only** to the extent that Defendants knew of and considered Plaintiff's disciplinary record prior to June 22, 2010. "Specific disciplinary incidents and the details surrounding them are not admissible, unless specific instances led to a decision on the . . . use of [four-point] restraints on [Plaintiff]." *Id.*

Likewise, Plaintiff's conduct during the relevant time period (June 22-24, 2010) is extremely probative of "the extent of the threat to the safety of staff and inmates" reasonably perceived by Defendants. *Ricks*, 891 F.3d at 480. To the extent that Plaintiff made threats of violence against other inmates or prison staff, such threats would play a large role in Defendants' assessment of whether Plaintiff posed a danger and what type of restraints were necessary. Plaintiff's actions prior to and during his restraint will be central at trial, ant the outcome will likely largely hinge upon whether the jury credits Defendants' assessment of Plaintiff's conduct or whether they believe the restraints were employed without legitimate reason because Plaintiff did not pose a threat. Because of the highly probative nature of this information, any risk of prejudice is tolerable under a Rule 403 analysis. *See United States v. Foster*, 891 F.3d 93, 110 (3d Cir. 2018) ("When evidence is highly probative, even a large risk of unfair prejudice may be tolerable."). Moreover, the

14

Court will issue an appropriate limiting instruction if requested. Thus, evidence of Plaintiff's conduct during the relevant time will be permitted.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion to compel discovery (Doc. No. 241) and motion for discovery sanctions (Doc. No. 243). The Court will also deny Plaintiff's motion for leave to call or add a witness or expert witness (Doc. No. 245) and his request for the issuance of a subpoena (Doc. No. 254).

Plaintiff's motions *in limine* (Doc. Nos. 250, 252, 262) will granted in part and denied in part. They will be granted with respect to evidence regarding Plaintiff's past arrests, convictions, and the facts underlying those convictions; the length of Plaintiff's sentence; the number of times Plaintiff has been incarcerated; his places of incarceration; other restrictions during confinement; and any placements in the SMU or administrative custody after the events of June 22-24, 2010. They will be denied with respect to evidence regarding Plaintiff's status as an SMU inmate at the time of the incident, his conduct during the relevant period (June 22-24, 2010), and his disciplinary history **only** to the extent that Defendants knew of and considered Plaintiff's disciplinary record prior to June 22, 2010. As noted above, "[s]pecific disciplinary incidents and the details surrounding them are not

admissible, unless specific instances led to a decision on the . . . use of [four-point] restraints on [Plaintiff]." *Womack*, 2012 WL 1245752, at *5. An appropriate Order follows.

                                                                     <u>s/Sylvia H. Rambo</u>
                                                                     SYLVIA H. RAMBO
                                                                     United States District Judge

Dated: February 12, 2020