

U.S. Department of Justice
Federal Bureau of Prisons

**DEFENDANT
EXHIBIT
A**

# Program Statement

**OPI:** CPD/CSB
**NUMBER:** P5566.06
**DATE:** 11/30/2005
**SUBJECT:** Use of Force and
Application of
Restraints

1.  [<u>**PURPOSE AND SCOPE**</u> **§552.20.  The Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed.  When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff and others, to prevent serious property damage, and to ensure institution security and good order.  Staff are authorized to apply physical restraints necessary to gain control of an inmate who appears to be dangerous because the inmate:**

**a.  Assaults another individual;**
**b.  Destroys government property;**
**c.  Attempts suicide;**
**d.  Inflicts injury upon self; or**
**e.  Becomes violent or displays signs of imminent violence.**

**This rule on application of restraints does not restrict the use of restraints in situations requiring precautionary restraints, particularly in the movement or transfer of inmates (e.g., the use of handcuffs in moving inmates to and from a cell in detention, escorting an inmate to a Special Housing Unit pending investigation, etc.).]**

Under this rule precautionary restraints may also be used as prescribed by medical staff for medical purposes in accordance with procedures set forth in the Health Services Manual.

The use of restraints on inmates due to mental illness (e.g., to prevent suicide or infliction of self-injury) is subject to this Program Statement's provisions and the Program Statement on

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

**Exhibit A, p. 1**

Suicide Prevention Program.  This includes the placement, reviews, and release of inmates from restraints at all Bureau facilities, including medical referral centers.

This policy's purpose is not to discourage employees from using the amount of force necessary to protect themselves from assault, bodily harm, and/or loss of life.  This policy will provide guidance and instruction on appropriate procedures when confronted with situations that may require the use of force to gain control of an inmate.

An employee may not use brutality, physical violence, or intimidation toward inmates, or use any force beyond that which is reasonably necessary to subdue an inmate.

2.  **PROGRAM OBJECTIVES**.  The expected results of this program are:

   a.  Force will ordinarily be used only when attempts to gain voluntary cooperation from the inmate have not been successful.

   b.  When force is used, it will be only the amount of force required to subdue an inmate, or preserve or restore institution security and good order.

   c.  Confrontation avoidance techniques will be used when feasible to avoid calculated use of force situations.

   d.  When an inmate must be subdued, the use-of-force team technique will be used when feasible.

   e.  Any inmate restrained to a bed will be checked every 15 minutes.

   f.  Chemical agents will be used as specified and, to the extent practicable, only after a review of the inmate's medical file, unless such a delay would endanger the safety of the inmate, other inmates, staff and the community, result in severe property damage, or effectuate an escape.

   g.  Restraints will be applied only for purposes outlined in policy and in authorized methods.

   h.  Staff will be trained in confrontation avoidance, use of force team technique, use of chemical agents, and application of restraints.

   i.  Each use of force incident will be documented, reported, and reviewed.

3.   **DIRECTIVES AFFECTED**

  a.   **Directive Rescinded**

    P5566.05   Use of Force and Application of Restraints on
                 Inmates (12/31/96)

  b.   **Directives Referenced**

    P1380.05   Special Investigative Supervisors Manual (8/1/95)
    P3420.09   Standards of Employee Conduct (2/5/99)
    P5214.04   HIV, Handling of Inmates Testing Positive (2/4/98)
    P5324.03   Suicide Prevention Program (5/3/95)
    P5500.11   Correctional Services Manual (10/10/03)
    P5500.12   Correctional Services Procedures Manual (10/10/03)
    P6031.01   Patient Care (1/15/05)
    P6190.03   Infectious Disease Management (6/28/05)

  c.   Rules cited in this Program Statement are contained in
28 CFR 552.20-27 and 29 CFR 1910.

4.   **STANDARDS REFERENCED**

  a.   American Correctional Association 4th Edition Standards for
Adult Correctional Institutions: 4-4190, 4-4191, 4-4202,
4-4203, 4-4206, 4-4281**(M),** and 4-4405

  b.   American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities: 3-ALDF-3A-17, 3-ALDF-3A-17-1,
3-ALDF-3A-28, 3-ALDF-3A-29, 3-ALDF-3A-31, and 3-ALDF-4E-32

  c.   American Correctional Association 2nd Edition Standards for
the Administration of Correctional Agencies:  2-CO-3A-01

5.   **[<u>TYPES OF FORCE</u> §552.21.]**   Since inmates occasionally become
violent or display signs of imminent violence, it is sometimes
necessary for staff to use force and restraints to prevent them
from hurting themselves, staff, or others, and/or from destroying
property.

  **[a.   <u>Immediate Use of Force.</u>   Staff may immediately use force
and/or apply restraints when the behavior described in §552.20
constitutes an immediate, serious threat to the inmate, staff,
others, property, or to institution security and good order.]**

  Section 552.20 refers to Section 1 of this Program Statement.

**Exhibit A, p. 3**

In an immediate use of force situation, staff may respond with or without the presence or direction of a supervisor.

**[b.  Calculated Use of Force and/or Application of Restraints. This occurs in situations where an inmate is in an area that can be isolated (e.g., a locked cell, a range) and where there is no immediate, direct threat to the inmate or others.  When there is time for the calculated use of force or application of restraints, staff must first determine if the situation can be resolved without resorting to force (see §552.23).]**

Section 552.23 refers to Section 7 of this Program Statement.

(1)  **Circumstances.**  Calculated rather than immediate use of force is desirable in all instances corrections workers encounter.  Although this is not always possible, staff must use common sense and good correctional judgment in each incident to determine whether the situation allows for the implementation of calculated or immediate use of force procedures.

The safety of all persons is a major concern and Bureau of Prisons staff are required by laws, rules, and regulations, related to the Bureau of Prisons, to protect others from the hostile actions of inmates.  Immediate or unplanned use of force by staff is required when an inmate is trying to self-inflict injuries which may be life-threatening or is assaulting any other person to include other inmates.  The destruction of government property may require the immediate use of force by staff in some circumstances.  If the above circumstances are not present, staff should, if possible, employ the principles of calculated use of force.

Calculated use of force is appropriate, for example, if the inmate is in a secure area or in an area where doors/grills may be secured, including cases when the inmate is making verbal threats or brandishing a weapon, provided staff believe there is no immediate danger of the inmate inflicting injury or harm to himself or herself or others.  Calculated use of force permits the use of other staff (e.g., psychologists, counselors, etc.) to attempt to resolve the situation non-confrontationally.

(2)  **Documentation.**  The entire interaction must be documented in writing and placed in the FOI Exempt section of the inmate's central file.  The documentation will reflect the actions and responses of each staff member participating in the confrontation avoidance process.

The entire process must be videotaped, including the introduction of all staff participating in the confrontation avoidance process.  The tape and documentation will be part of the investigation package for the After Action Review (see Sections 14 and 15).  Additionally, the Warden must forward a copy of each video tape to the Regional Director within four working days of the incident.

**[c.  <u>Use of Force Team Technique.</u>  If use of force is determined to be necessary, and other means of gaining control of an inmate are deemed inappropriate or ineffective, then the Use of Force Team Technique shall be used to control the inmate and to apply to include ambulatory leg restraints.  The Use of Force Team Technique ordinarily involves trained staff, clothed in protective gear, who enter the inmate's area in tandem, each with a coordinated responsibility for helping achieve immediate control of the inmate.]**

See the Correctional Services Manual section on Use of Force Team Techniques.

**[d.  <u>Exceptions.</u>  Any exception to procedures outlined in this rule is prohibited, except where the facts and circumstances known to the staff member would warrant a person using sound correctional judgment to reasonably believe other action is necessary (as a last resort) to prevent serious physical injury, or serious property damage which would immediately endanger the safety of staff, inmates, or others.]**

The reviews are conducted to determine compliance with the provisions of this Program Statement.  As the team reviews the use of force incident, care should be taken in making a determination whether sound correctional judgement was used in any calculated or immediate use of force given the circumstances at the time of the incident.  The team's findings will be documented in writing.

The Warden or Acting Warden, Associate Warden (Correctional Services), Captain, and Health Services Administrator or designee will comprise the After-Action Review Team.  Each review must be conducted on the next work day following the incident (see Section 15).  A representative of the Council of Prison Locals at the appropriate level will be provided a copy of the After-Action report in accordance with appropriate laws, rules, and regulations.

The Warden must provide documentation to the Regional Director within two work days after the inmate has been released from

restraints (if applicable).  The report will confirm the review
was conducted and the use of force was either appropriate or
inappropriate.  This requirement applies to all instances
involving the use of force, excluding the use of firearms (see
the Program Statements on the Correctional Services Manual and
the Correctional Services Procedures Manual for additional
information on Use of Force Team Techniques).

6.  **[PRINCIPLES GOVERNING THE USE OF FORCE AND APPLICATION OF
RESTRAINTS** §552.22

   **a.  Staff ordinarily shall first attempt to gain the inmate's
voluntary cooperation before using force.]**

   See Section 7 of this Program Statement for confrontation
avoidance procedures prior to any calculated use of force.

   **[b.  Force may not be used to punish an inmate.**

   **c.  Staff shall use only that amount of force necessary to
gain control of the inmate.  Situations when an appropriate
amount of force may be warranted include, but are not limited to:**

      **(1)  Defense or protection of self or others;**

      **(2)  Enforcement of institutional regulations; and**

      **(3)  The prevention of a crime or apprehension of one who
has committed a crime.**

   **d.  When immediate use of restraints is indicated, staff may
temporarily apply such restraints to an inmate to prevent that
inmate from hurting self, staff, or others, and/or to prevent
serious property damage.  When the temporary application of
restraints is determined necessary, and after staff have gained
control of the inmate, the Warden or designee is to be notified
immediately for a decision on whether the use of restraints
should continue.]**

   Restraints should be used only when other effective means of
control have failed or are impractical.

   Designee refers to the Acting Warden or Administrative Duty
Officer.

   An inmate who is pregnant should not be placed in restraints
unless there are reasonable grounds to believe the inmate
presents an immediate, serious threat of hurting herself, staff,
or others, or that she presents an immediate credible risk of

escape that cannot be reasonably contained through other methods. For additional guidance refer to Section 13.

**[e.  Staff may apply restraints (for example, handcuffs) to the inmate who continues to resist after staff achieve physical control of that inmate, and may apply restraints to any inmate who is placed under control by the Use of Force Team Technique. If an inmate in a forcible restraint situation refuses to move to another area on his own, staff may physically move that inmate by lifting and carrying the inmate to the appropriate destination.]**

Staff are cautioned not to use the restraints for lifting or carrying an inmate.

**[f.  Restraints should remain on the inmate until self-control is regained.**

If the inmate was placed in restraints because of an assault on staff, the assaulted employee must not be involved in deciding whether the inmate has regained self-control.

**g.  Except when the immediate use of restraints is required for control of the inmate, staff may apply restraints to, or continue the use of progressive restraints on, an inmate while in a cell in administrative detention or disciplinary segregation only with approval of the Warden or designee.**

**h.  Restraint equipment or devices (e.g., handcuffs) may not be used in any of the following ways:**

**(1)  As a method of punishing an inmate;**

**(2)  About an inmate's neck or face, or in any manner which restricts blood circulation or obstructs the inmate's airways;]**

Tape shall not be placed around an inmate's mouth, nose, or neck.  Staff protective equipment must be sufficient to insulate staff from an inmate's spitting or biting, and conform with 29 CFR 1910.1030 and the Program Statement on Infectious Disease Management.  Staff will not use any item or device (e.g., towels, sheets, blankets, hosiery, masks) in use of force situations.

**[(3)  In a manner that causes unnecessary physical pain or extreme discomfort;]**

In general, when applying restraints, staff will use sound correctional judgement to ensure unnecessary pressure is not applied to the inmate.

Although the proper application of restraints may result in

some discomfort, prohibited uses of restraints include, but are
not limited to: "hogtying", unnecessarily tightness, or
improperly applied restraints.  All inmates placed in restraints
should be closely monitored.

     When it is necessary to use continued restraints after any
use of force incident, hard restraints (i.e., steel handcuffs and
leg irons) are to be used only after soft restraints have proven
ineffective, or a past history of ineffectiveness exists.

     **[(4)  To secure an inmate to a fixed object, such as a cell
door or cell grill, except as provided in §552.24.]**

     Section 552.24 refers to Section 10 of this Program
Statement.

     **[i.  Medication may not be used as a restraint solely for
security purposes.**

     **j.  All incidents involving the use of force and the
application of restraints (as specified in § 552.27) must be
carefully documented.]**

     Section 552.27 refers to Section 14 of this Program Statement.
This documentation includes, whenever practicable, filming the
incident and a formal review by the institution's After-Action
Review Committee.  Reports and videotapes of the incident must be
reviewed, audited, and monitored by Regional and Central Office.

     All use of force incidents must be reported and investigated to
protect staff from unfounded allegations and eliminate the
unwarranted use of force.

7.  **[CONFRONTATION AVOIDANCE PROCEDURES §552.23.  Prior to any
calculated use of force, the ranking custodial official
(ordinarily the Captain or shift Lieutenant), a designated mental
health professional, and others shall confer and gather pertinent
information about the inmate and the immediate situation.  Based
on their assessment of that information, they shall identify a
staff member(s) to attempt to obtain the inmate's voluntary
cooperation and, using the knowledge they have gained about the
inmate and the incident, determine if use of force is necessary.]**

Ordinarily, in calculated use of force situations, there is time
for the Captain or Shift Lieutenant, Mental Health professional,
Health Services staff, Chaplain, or other staff such as the
inmate's Unit Manager, Case Manager, or Counselor, to confer and
assess the situation.

**Exhibit A, p. 8**

This discussion may be accomplished by telephone or in person. The purpose is to gather relevant information concerning the inmate's medical/mental history (e.g., hypoglycemia, diabetes, etc.), any recent incident reports or situations which may contribute to the inmate's present condition (e.g., pending criminal prosecution or sentencing, recent death of a loved one, divorce, etc.).

This assessment should include discussions with staff who are familiar with the inmate's background or present status. This information may provide insight into the cause of the inmate's immediate agitation.

Additionally, it may identify other staff who may have a rapport with the inmate, and can possibly resolve the incident peacefully without the use of force.

8.   **USE OF FORCE SAFEGUARDS.**   To prevent injury and exposure to communicable disease in calculated use of force situations, the following must occur.

   a.   Staff participating in any calculated use of force, including those participating in the Use of Force Team technique, must:

      (1)   Wear appropriate protective gear in accordance with the circumstances.  A list of protective gear to be used, depending upon the circumstances, may be found in 29 CFR 1910 and the Program Statements on Correctional Services Manual and Infectious Disease Management.

      (2) Personnel with documented injuries or diseases have an obligation to inform management that they are unable to participate in calculated use of force situations.  Staff members will also be asked during their introduction on camera if they are willing to participate in this action and have no injuries or diseases that would prohibit their participation.  The agency will comply with the hepatitis B vaccination procedures as outlined in 29 CFR 1910.1030.

   b.   Personnel with a skin disease or skin injury shall not be permitted to participate in a calculated use of force action.

   c.   Recognizing that a rapid response is imperative in an immediate use of force situation, responding staff must use sound correctional judgment in determining if time is available to obtain readily available protective equipment when responding (shields, helmets with face shields, pads, jumpsuits, etc.). Often, circumstances will not permit the time to carry this out.

**Exhibit A, p. 9**

   If an emergency situation results in a use of force,
precautions, such as protective clothing and equipment, impede
the transmission of infectious diseases.

   d.  Staff members will treat every calculated use of force as
if blood and bodily fluids are present.  Sufficient protective
equipment and clothing must be available for all staff
participating in a calculated use of force.  Employees must
report any exposure to bodily fluids, or other contagious
diseases, that occur during the course of their duties.

   Employees must report these exposures via the injury assessment
form or through other written methods to the Health Services
Department, as soon as practicable, and appropriate OWCP form(s).
The employee should also immediately inform his or her
supervisor.

   If it is possible that an inmate could have transmitted a
disease such as human immunodeficiency virus (HIV), the exposed
employee may request the inmate to be tested promptly.  The
employer recognizes this is an extremely important concern, and
due diligence will be exercised testing the inmate and processing
the test.  The employer will notify the employee of the test
results immediately upon receipt in accordance with the
Correctional Officers Health & Safety Act of 1998.

   (1)  After all use of force incidents, areas where there is
spillage of blood, or other body fluids, must be sanitized
immediately upon the authorization of the Special Investigative
Supervisor (SIS) or Shift Supervisor, who must first determine
whether there is a need to preserve evidence.  Procedures for the
cleaning of blood spillage or bodily fluids must be made
available to staff responsible for such cleaning.

   (2)  All blood and body secretions will be removed
immediately in the appropriate waste disposal container.  The
area must be washed with an antiseptic solution, pursuant to the
Program Statements on Procedures for Handling of HIV Positive
Inmates Who Pose a Danger to Others and Infectious Disease
Management.

   (3)  Sanitation measures, in compliance with 29 CFR 1910 and
Safety directives (i.e., local exposure control plan) must be
implemented following use of force incidents where there is a
possibility of exposure to bodily fluids or potentially
infectious materials.  Such measures may not take place until the
scene has been released from the investigatory process.  Any
clothing, including staff's or inmate's clothing, as well as

personal protective equipment which has been exposed to blood borne pathogens or other potentially infectious diseases must be disinfected or destroyed immediately.

9.   **PROGRESSIVE AND AMBULATORY RESTRAINTS**.  For this PS's purposes, progressive restraints are defined as the process of using the least restrictive restraint method to control the inmate as deemed necessary for the situation.  Based on the inmate's behavior, more restrictive and secure restraints may be used.

Ambulatory restraints are defined as approved soft and hard restraint equipment which allow the inmate to eat, drink, and take care of basic human needs without staff intervention.

The policies and procedures described in Sections 10 and 13 of this Program Statement will be followed for inmates placed in restraints under this section (ambulatory restraints) including:

- conditions of confinement,
- scheduled checks,
- documentation, and
- 24 and 48 hour reviews by the Warden and staff.

Ambulatory restraints should initially be used to restrain an inmate if deemed appropriate for the situation.  An example of such situations is when an assaultive incident occurred quickly and ended, and the inmate is no longer displaying signs of violence or aggressiveness.  Using ambulatory restraints for a period of time may be appropriate for protecting staff and others, pending an assessment by staff to determine whether the inmate has regained self-control.

Staff should look for a pattern of non-disruptive behavior over a period of time as an indication the inmate has regained self-control and is no longer a disruptive threat.  Additionally, the 15 minute and two-hour logs should be reviewed to support any decision concerning the release of an inmate in restraints. Inmates asleep at the time of two-hour review will be awakened to assess their condition.

If the situation dictates the need for more restrictive or secure restraints, i.e., the inmate's behavior becomes increasingly aggressive and disruptive, staff must determine the type of progressive restraints to be used (hard restraints with or without waist chain or waist belt, four-point soft restraints with hard restraints used for securing the inmate to the bed, or four-point hard restraints).

In situations involving highly assaultive and aggressive inmates, progressive restraints should be used only as an intermediate measure in placing the inmate in or removing an inmate from four-point restraints.

When it is necessary to restrain an inmate under this section (ambulatory restraints) for longer than eight hours, the Regional Director or Regional Duty Officer must be notified telephonically by the Warden or designee or the Institution Administrative Duty Officer.

10. **[**<u>**USE OF FOUR-POINT RESTRAINTS**</u> **§552.24. When the Warden determines that four-point restraints are the only means available to obtain and maintain control over an inmate, the following procedures must be followed:**

   **a. Soft restraints (e.g., vinyl) must be used to restrain an inmate, unless:**

      **(1) Such restraints previously have proven ineffective with respect to that inmate, or**

      **(2) Such restraints are proven ineffective during the initial application procedure.]**

   This may not be delegated below the Warden's level.

   **[b. Inmates will be dressed in clothing appropriate to the temperature.**

   **c. Beds will be covered with a mattress, and a blanket/sheet will be provided to the inmate.]**

   Under no circumstance shall an inmate be allowed to remain naked or without bed covering placed over the inmate's body unless determined necessary by qualified health personnel.

   **[d. Staff shall check the inmate at least every fifteen minutes, both to ensure that the restraints are not hampering circulation and for the general welfare of the inmate. When an inmate is restrained to a bed, staff shall periodically rotate the inmate's position to avoid soreness or stiffness.]**

   Qualified health personnel shall evaluate the inmate to be restrained to a bed to determine the position the inmate should be placed in. When qualified health personnel are not immediately available, the inmate shall be placed in a "face-up"

**Exhibit A, p. 12**

position until evaluated by qualified health personnel.  Inmates must be checked every 15 minutes and this information shall be documented.

Inmates will be checked every 15 minutes and this information must be documented.  See Section 14.b., **Use of Restraints Reporting Requirements** for detailed information on documenting 15 minute checks.

**[e.  A review of the inmate's placement in four-point restraints shall be made by a Lieutenant every two hours to determine if the use of restraints has had the required calming effect and so that the inmate may be released from these restraints (completely or to lesser restraints) as soon as possible.  At every two-hour review, the inmate will be afforded the opportunity to use the toilet, unless the inmate is continuing to actively resist or becomes violent while being released from the restraints for this purpose.]**

Based on the particular nature of the situation, the Lieutenant who has offered the inmate a bathroom break will determine how many staff are needed to release the inmate from restraints and provide the inmate a bathroom break.  The Lieutenant will assemble the staff and visually observe and direct staff as they complete this task.  The Lieutenant will determine what protective equipment is needed, if any, for the staff assisting with the inmates bathroom break.

The goal of the two-hour reviews is to determine, as soon as possible, that the inmate has regained self-control and may be placed in lesser restraints.  See Section 9, **Progressive and Ambulatory Restraints.**  Staff should look for a pattern of non-disruptive behavior over a period of time indicating the inmate has regained self-control and is no longer a disruptive threat.  Additionally, the 15 minute and two-hour check logs must be reviewed to support any decision for lesser measures or the removal of restraints.  Inmates asleep at the time of the two-hour reviews should be awakened to assess their condition.

If an inmate is released temporarily from four-point restraints for any reason, e.g., to use the toilet, consumption of food or beverage, etc., without continuing disruptive or aggressive behavior, the Lieutenant must consider authorizing lesser restraints or removing the restraints.  See Section 9, **Progressive and Ambulatory Restraints.**  If an inmate is returned to four-point restraints after a non-disruptive break, the Lieutenant, must document the reasons for the action.

P5566.06, CN-1
8/29/2014
Page 14

Ordinarily, the Operations Lieutenant makes the decision to release an inmate or apply lesser restraints.  This authority must not be delegated below the Lieutenant level.  If the Lieutenant needs to consult with mental health staff before making the decision on whether to release an inmate from restraints, it will be sought without delay.

**[f.  When the inmate is placed in four-point restraints, qualified health personnel shall initially assess the inmate to ensure appropriate breathing and response (physical or verbal).  Staff shall also ensure that the restraints have not restricted or impaired the inmate's circulation.  When inmates are so restrained, qualified health personnel ordinarily are to visit the inmate at least twice during each eight-hour shift.  Use of four-point restraints beyond eight hours requires the supervision of qualified health personnel.  Mental health and qualified health personnel may be asked for advice regarding the appropriate time for removal of the restraints.]**

Health Services staff, perform initial and subsequent required checks, must examine and document the following:

- Date and time of examination;
- Examining staff member;
- Body position;
- Restraints (adequate circulation);
- Vital signs (blood pressure, pulse, respiration, and temperature);
- Medication;
- Injuries;
- The inmate's intake, output, hydration, etc.;
- Possible medical reasons for behavior;
- Deterioration of inmate's health; and
- Any other significant findings and comments.

In institutions without 24-hour medical coverage, medical staff must report to the institution twice during each eight-hour shift that an inmate remains in four-point restraints.  Such staff will be compensated (overtime, compensatory hire, etc.) in accordance with the regulations.  Under no circumstances will non-medical staff perform a medical assessment of an inmate.

Psychology Services staff will examine inmates in four-point restraints at least once during every 24 hour period that the inmate is restrained.  Psychology staff examinations will include the following:

(1)  A review of the inmate's psychological history;

**Exhibit A, p. 14**

(2)   A description of the interview conducted with the inmate;

(3)   A review of the 15 minute, two-hour, and health services review logs;

(4)   A description of the inmate's current mental health status;

(5)   Recommendations; and

(6)   Whether the inmate is being referred for mental health institution placement and an explanation.

See Section 14.b., **Use of Restraints Reporting Requirements**, for detailed information on documenting Health and Psychology Services Staff reviews.

**[g.   When it is necessary to restrain an inmate for longer than eight hours, the Warden (or designee) or institution administrative duty officer shall notify the Regional Director or Regional Duty Officer by telephone.]**

The above notification will be made for each consecutive eight-hour period the inmate remains in restraints.  Documentation detailing the reasons for the placement of each inmate in four-point restraints, regardless of the duration, must be provided to the Regional Director or Regional Duty Officer on the following work day.

Additionally, within 24 hours of placement in restraints, a review of the inmate's status will be conducted and a behavior management plan prepared.  The Warden, Associate Warden, Captain, Unit Manager, Health Services Administrator, and Chief Psychologist will conduct this review.  All relevant information will be reviewed, including the 15-minute, Lieutenant, medical staff, and psychology service checks logs.

Evidence indicating the inmate's inability to be placed in lesser restraints or released from restraints must support the Warden's decision to continue restraints beyond the initial 24 hour period.  In making this decision, the Warden should look for a pattern of non-disruptive behavior over a period time indicating the inmate has regained self-control and is no longer a disruptive threat.

Additionally, the Warden's documentation must indicate specifically what considerations are being made for mental health treatment, including possible referral to a mental health institution.

The Warden's review should be documented in memorandum format to the file, with a copy faxed to the Regional Director immediately upon completion.  The memorandum should summarize the reports of each participant, followed by the Warden's decision and justification.  Group reviews of this type must be conducted within every 48-hour period following the initial 24-hour review. See Section 14.b., Use of Restraints Reporting Requirements, for detailed information on documenting the initial 24-hour, and subsequent 48-hour, reviews.

11.  [<u>USE OF CHEMICAL AGENTS OR NON-LETHAL WEAPONS</u> §552.25.  **The Warden may authorize the use of chemical agents or non-lethal weapons only when the situation is such that the inmate:**

   **a.  Is armed and/or barricaded; or,**

   **b.  Cannot be approached without danger to self or others; and,**

   **c.  It is determined that a delay in bringing the situation under control would constitute a serious hazard to the inmate or others, or would result in a major disturbance or serious property damage.]**

   Qualified health personnel (Physician, Physician's Assistant, or nurse) shall be consulted prior to staff using chemical agents unless the circumstances require an immediate response. Ordinarily, in a calculated use of force situation, the inmate's medical file must be reviewed by these personnel to determine whether the inmate has any diseases or conditions which would be dangerously affected if chemical agents or non-lethal weapons are used.  This includes, but is not limited to: asthma, emphysema, bronchitis, tuberculosis, obstructive pulmonary disease, angina pectoris, cardiac myopathy, or congestive heart failure.  Local procedures will be developed where 24 hour medical coverage is unavailable.

12.  [<u>MEDICAL ATTENTION IN USE OF FORCE AND APPLICATION OF RESTRAINTS INCIDENTS</u> §552.26

   **a.  In immediate use of force situations, staff shall seek the assistance of mental health or qualified health personnel upon gaining physical control of the inmate.  When possible, staff shall seek such assistance at the onset of the violent behavior. In calculated use of force situations, the use of force team leader shall seek the guidance of qualified health personnel(based on a review of the inmate's medical record) to identify physical or mental problems.  When mental health staff**

**Exhibit A, p. 16**

**or qualified health personnel determine that an inmate requires continuing care, and particularly when the inmate to be restrained is pregnant, the deciding staff shall assume responsibility for the inmate's care, to include possible admission to the institution hospital, or, in the case of a pregnant inmate, restraining her in other than face down four-point restraints.**

**b.  After any use of force or forcible application of restraints, the inmate shall be examined by qualified health personnel, and any injuries noted, immediately treated.]**

If any staff involved in a use of force reports an injury, Health Services personnel should provide an immediate examination and initial emergency treatment as required.  Staff may also seek treatment from their personal physician.

13.  **USE OF FORCE IN SPECIAL CIRCUMSTANCES.**  In certain extenuating circumstances, and after confrontation avoidance has failed or has proven to be impractical, staff may be forced to make a decision, such as whether to use force on a pregnant inmate or an aggressive inmate with open cuts, sores, or lesions.

Special cases such as mentally ill, disabled, or pregnant inmates, after consultation with the Clinical Director, must be assessed carefully to determine whether the situation is grave enough to require the use of physical force.

a.  **Pregnant Inmates.**  When pregnant inmates have to be restrained, necessary precautions must be taken to ensure the fetus is unharmed.  Health Services personnel must prescribe the necessary precautions, including decisions about the manner in which the inmate is to be restrained, i.e., whether medical personnel should be present during the application of restraints, whether the inmate should be restrained at the institutional hospital or a local medical facility, etc.

b.  **Inmates with Wounds or Cuts.**  Aggressive inmates with open cuts or wounds who have attempted to harm themselves or others should be carefully approached by staff in the prescribed protective clothing/gear.  A full body shield should also be used during these encounters to protect staff.  Aggressive inmates, after placement in restraints, should be placed in administrative detention and separated from other inmates.

Ordinarily, inmates of this status must remain in administrative detention until cleared to return to the general population by the Captain, Chief Psychologist, and the Clinical Director with the Warden's approval.

14.  **[**<u>**DOCUMENTATION OF USE OF FORCE AND APPLICATION OF RESTRAINTS INCIDENTS**</u> **§552.27.  Staff shall appropriately document all incidents involving the use of force, chemical agents, or non-lethal weapons.  Staff shall also document, in writing, the use of restraints on an inmate who becomes violent or displays signs of imminent violence.  A copy of the report shall be placed in the inmate's central file.]**

a.  **Report of Incident.**  A Use of Force Report (BP-E583) will be prepared on the use of force, chemical agents/pepper mace, progressive restraints, and non-lethal weapons.  This reporting requirement includes the application of progressive restraints on an inmate who complies with the placement of the restraints.

The report must establish the identity of all involved in the incident; inmates, staff, and others.  It must provide a vivid, detailed description of the incident.  The report, including mental health/medical reports must be submitted to the Warden or designee no later than the end of the tour of duty.  A copy of the report is to be placed in the inmate's central file.  Copies are also to be sent within two work days to:

(1)  Assistant Director, Correctional Programs Division;
(2)  Assistant Director, Health Services Division;
(3)  Central Office Correctional Services Administrator;
(4)  Regional Director; and,
(5)  Regional Correctional Services Administrator.

A report is not necessary for the general use of restraints (for example, the routine movement or transfer of inmates).

b.  **Use of Restraints Reporting Requirements**

**Documented Reviews.**  The following reviews will be documented as indicated:

(a) Fifteen-minute check - **fifteen-Minute Restraints Check Form (24 Hours)** (BP-S0717.055);

(b) Two-hour Lieutenant check - **Two-Hour Lieutenant Restraints Check Form (24 Hours)** (BP-S0718.055);

(c) Health Services Staff Review  - **Health Services Restraint Review Form (24 Hours)** (BP-S0719.055); and

(d) Psychology Staff Check  - **Psychology Services Restraint Review Form (24 Hours)** (BP-S0720.055).

Staff must complete all forms until the inmate is released from restraints.  The forms will be submitted to the Warden as required for periodic reviews of an inmate's placement in restraints.  After release from restraints, these forms must be compiled and maintained in the Inmate's Central File and Special Investigative Supervisor's file.

c.  **Videotape of Use of Force Incidents**.  Staff must obtain a video camera immediately and record any use of force incident, unless it is determined that a delay in resolving the situation would endanger the inmate, staff, or others, or would result in a major disturbance or serious property damage.

The video recording will also include any medical examination conducted after:

- the application of restraints,
- use of chemical agents,
- use of pepper mace, and/or
- use of non-lethal weapons.

Calculated use of force shall be videotaped following the sequential guidelines presented in the Correctional Services Manual.  The original videotape must be maintained and secured as evidence in the SIS Office.  A copy of every videotape, after review by the Warden (within four work days of the incident), unless requested sooner by the Regional Director, will be provided immediately to the Regional Director for review.

The Regional Director shall forward videotapes of questionable or inappropriate cases immediately to the Assistant Director, Correctional Programs Division, Central Office, for review.

When a threat to the safety of the inmate, staff or others, or property, requires an immediate response, staff are obligated to obtain a camera and begin recording the event as soon as feasible.  As soon as control of the situation has been obtained staff must record information on:

- injuries;

■    circumstances that required the need for immediate use of force; and

■    identifications of the inmates, staff, and others involved.

    d.  **Documentation Maintenance**.  The Captain must maintain all documentation, including the videotape and the original BP-E583, for a minimum of 2½ years.  A separate file must be established on each use of force incident.

15.  **AFTER-ACTION REVIEW OF USE OF FORCE AND APPLICATION OF RESTRAINTS INCIDENTS**.  Following any incident involving the use of force (calculated or immediate) and the application of restraints, the Warden, Associate Warden (responsible for Correctional Services), Health Services Administrator, and Captain must meet and review the incident.  The review is conducted to assess the rationale of the actions taken (e.g., if the force was appropriate and in proportion to the inmate's actions).

The review team should gather relevant information to determine if policy was adhered, and complete the standard After-Action Report (BP-E586), indicating the nature of the review and findings.  The BP-E586 should be submitted within two working days after the inmate is released from restraints.

    a.  **Videotape Review**.  The After-Action Review Team should review the actions of the staff for compliance with the Correctional Services Manual and this policy.  At a minimum, this review should include the following:

■    The Lieutenant displayed professional behavior during the Forced Cell Team technique.

■    The Lieutenant ensured only the force necessary to control the inmate is used, based on the nature of the incident.

■    The Lieutenant monitored the actions of the inmate and team members; and was not involved in subduing the inmate unless it is deemed necessary to prevent staff or inmate injury.

■    The Use of Force Team members were wearing the proper protective gear.

■    Unauthorized items such as towels, tape, surgical mask, hosiery, etc., was not being used.

■   Introductions were made by the Lieutenant, Use if Force
Team members, medical staff, and staff involved in the
confrontation avoidance technique as well as
identifying all staff present, including those
observing.

■   Use of Force Team members used sound correctional
judgment to ensure unnecessary pressure is not applied
to the inmate.

■   Use of Force Team members used only the amount of force
necessary to gain control of the inmate.

■   Inabilities to effectively gain control of the inmate
are assessed and may indicate that additional training
is necessary.

■   There was continuous operation of the video and breaks
were documented and appropriately justified.

■   Prompt examination of the inmate followed the move and
findings were noted on the video tape.

■   The method of chemical agents used was predetermined
and use of devices was in accordance with the
Correctional Services Manual.

■   The inmate was given the opportunity to voluntarily
submit to the placement of restraints.

■   Conversations were appropriate and necessary between
team members and individuals during the use of force.

b.  **Report Completion.**  When this review is completed, an
After-Action Review Report (BP-E586) must be completed, as soon
as possible, not later than two working days after the inmate has
been removed from restraints.  This will ensure that staff with
relevant information will be available and any necessary medical
follow-up can be immediately provided to ascertain the nature of
any injuries involved.

The Warden or designee will attest by his or her signature that
the review was conducted and the use of force was appropriate or
inappropriate.

c.  **Further Investigation.**  The reviewers should also decide if
the matter requires further investigation.  If deemed
appropriate, the Warden will refer the matter for further
investigation to the Office of Inspector General, Office of

Internal Affairs, or Federal Bureau of Investigation.  Copies of the report must be forwarded to the Regional Director and Assistant Director, Correctional Programs Division, Central Office.

　　d.  **Report on Restraints Use.**  A report is not necessary for the general use of restraints.  For example, a report is not required in the routine movement or transfer of inmates.

16.  **TRAINING IN THE CONFRONTATION AVOIDANCE/USE OF FORCE TECHNIQUE.**  In order to control any potential situation involving aggressive inmates, all staff must be made aware of their responsibilities through ongoing training.  At a minimum, training must cover:

- communication techniques,
- cultural diversity,
- dealing with the mentally ill,
- confrontation avoidance procedures,
- the application of restraints (progressive and hard), and
- reporting procedures.

　　a.  **Training Topics.**  The Warden of each institution shall determine how many staff should be trained in confrontation avoidance procedures and forced cell move techniques.  At a minimum, these staff shall be trained on an annual basis.  Each staff member participating in a calculated forced cell move must have documented proof of annual training in these areas.  Training should also include specific information pertaining to special situations.

　　b.  **Restraints Training.**  Staff should be trained thoroughly in the use of both soft and hard restraints on an annual basis.  The application of soft restraints to an inmate can be cumbersome if proper training is not provided.

　　Soft restraints such as vinyl or leather should be used prior to applying hard restraints.  For pregnant inmates, the approved vinyl or leather restraint belt should be used instead of a metal waist chain, whenever possible, to prevent injury to the inmate or fetus.


　　　　　　　　　　　　/s/

　　　　　　　　　　　　Harley G. Lappin
　　　　　　　　　　　　Director

**Exhibit A, p. 22**