# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID E. HILL,** | : | CIVIL ACTION NO. 3:11-CV-1609 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **HARLEY LAPPIN**, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff David E. Hill, an individual currently incarcerated at the United States Penitentiary in Florence, Colorado, commenced this action pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), alleging various constitutional violations during his incarceration at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"). The remaining defendants are Warden B. Bledsoe and Lieutenants J. Hepner, M. Saylor, M. Edinger, and P. Carrasquilla. Hill's two remaining claims arise under the Eighth Amendment: he contends that defendants subjected him to excessive force and unconstitutional conditions of confinement while he was in four-point restraints for a period of approximately 43 hours in June 2010. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56, asserting that the court should decline to extend the Bivens remedy to Hill's remaining claims. For the reasons set forth below, the court will grant defendants' motion.

I. **Factual Background and Procedural History**[1]

The Federal Bureau of Prisons ("BOP") "has a comprehensive policy for the authorization of the use of restraints, including four-point restraints, when an inmate becomes violent or displays signs of imminent violence." (Doc. 346 ¶ 1). The BOP also has a comprehensive disciplinary policy that allows staff members "to impose sanctions on inmates who commit prohibited acts." (Id. ¶ 2). "Threatening another with bodily harm is classified as a high severity level prohibited act." (Id. ¶ 3). Suffice it to say that the BOP has been compelled to invoke these policies with Hill on multiple occasions. Indeed, prior to the incident that gave rise to the instant matter, Hill had previously been placed in ambulatory restraints approximately 10 to 11 times. (Id. ¶ 4). Hill typically remained in the ambulatory restraints for at least 24 hours. (Id.)

On June 22, 2010, at approximately 8:00 a.m., defendant Hepner ordered Hill to submit to hand restraints so he could be moved to a different cell with a cellmate. (Id. ¶ 5). Hill was placed in restraints, and later that afternoon, "he was moved to a shower area, and the ambulatory restraints were removed." (Id. ¶ 6).

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (Docs. 346, 355). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the Rule 56.1 statements.

At some point, defendant Hepner decided to place Hill in four-point restraints. (Id. ¶ 9). Defendant Bledsoe authorized a Use of Force Team to place Hill in the four-point restraints. (Id. ¶ 10). Defendants claim the restraints were necessary because Hill had engaged in threatening behavior; Hill denies doing so. (See id. ¶¶ 5-11; Doc. 355 ¶¶ 5-11).

USP Lewisburg personnel (some of whom are defendants and some of whom are not) performed periodic welfare checks on Hill approximately every two hours. Reports for most of these checks indicate Hill "had not used the toilet." (See Doc. 346 ¶¶ 13-16, 18, 20-34). Hill counters that he asked "for medical or the bathroom" during these checks but that he "was not *permitted* to use the toilet." (See Doc. 355 ¶¶ 13-16, 18, 20-34 (emphasis added)). Hill relieved himself only twice during the approximately 43 hours he spent in restraints, using a urinal bottle provided to him during the 12:00 a.m. and 4:00 a.m. checks on June 23, 2010. (See Doc. 346 ¶¶ 17, 19; Doc. 355 ¶¶ 17, 19). Hill states that he was not allowed to use a toilet to defecate at any point while in restraints. (See Doc. 355 ¶ 12). The parties dispute whether Hill was offered or given food during this time, (see Doc. 346 ¶¶ 14, 22, 27, 28; Doc. 355 ¶¶ 14, 22, 27, 28), but agree he was offered and accepted water on several occasions, (see Doc. 346 ¶¶ 16, 18, 28; Doc. 355 ¶¶ 16, 18, 28).

At 8:00 a.m. on June 24, 2010, the lieutenant checking on Hill noted that he was "displaying the desired calm behavior." (Doc. 346 ¶ 33). At 10:00 a.m., the lieutenant noted that Hill had used the toilet and that "the desired calming effect had been achieved." (Id. ¶ 34). Hill was removed from four-point restraints at that time. (Id.)

Hill initiated this action *pro se* on August 29, 2011, by filing his Bivens complaint against several individuals employed at USP Lewisburg. The matter was initially assigned to the late Honorable Richard P. Conaboy, before being reassigned to the Honorable Sylvia H. Rambo in 2018 and to the undersigned in March 2020. In June 2020, counsel entered an appearance on Hill's behalf. Following Rule 12 and Rule 56 motion practice, only Hill's Eighth Amendment claims for excessive force and unconstitutional conditions of confinement remain. Defendants Bledsoe, Hepner, Saylor, Carrasquillo, and Edinger now move for summary judgment as to both claims.

## II. Legal Standard

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III. **Discussion**

In Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court of the United States recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. See Bivens, 403 U.S. at 397. Nearly 50 years have passed since Bivens was handed down in June 1971. In that time, the Court has extended the Bivens remedy only twice: first, to a claim for gender discrimination under the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228, 248-49 (1979), and later to a claim for inadequate prison medical care under the Cruel and

Unusual Punishment Clause of the Eighth Amendment, see Carlson v. Green, 446 U.S. 14, 18-23 (1980).[2]

The Supreme Court's 2017 decision in Ziglar v. Abbasi, 582 U.S. ___, 137 S. Ct. 1843 (2017), made clear that Bivens' seeming latency in the intervening decades was no accident. The Court explained: "Given the notable change in the Court's approach to recognizing implied causes of action, . . . expanding the Bivens remedy is now a 'disfavored' judicial activity." See Abbasi, 137 S. Ct. at 1857. The Court noted it had "'consistently refused to extend Bivens to any new context or new category of defendants' . . . for the past 30 years." Id. (collecting cases).

---

[2] Hill argues that a fourth Supreme Court decision, Farmer v. Brennan, 511 U.S. 825 (1994), established another Bivens context. In Farmer, the Court considered an inmate's claim that prison officials violated the Eighth Amendment by their "deliberately indifferent failure to protect [her] safety." See Farmer, 511 U.S. at 831. The inmate, a transgender woman, had been placed into the general population at a male federal prison with a reputation for violence. See id. at 830-31. Within two weeks, she had been beaten and violently raped by another inmate. See id. The Court reversed the grant of summary judgment and allowed the plaintiff's claim to proceed without discussing Bivens or the availability of an implied cause of action. See id. at 851. We acknowledge that our court of appeals recently characterized Farmer as "recogniz[ing] a failure-to-protect [Bivens] claim under the Eighth Amendment." See Bistrian v. Levi, 912 F.3d 79, 91 (3d Cir. 2018). Yet, the Supreme Court has not endorsed that characterization of Farmer; in decisions both before and after Bistrian, the Supreme Court has never counted Farmer as among its Bivens precedents. To the contrary, the Court has heretofore limited the Bivens remedy to only three contexts cabined by its Bivens, Davis and Carlson decisions. See Ziglar v. Abbasi, 582 U.S. ___, 137 S. Ct. 1843, 1855 (2017) ("These three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."); Hernandez v. Mesa, 589 U.S. ___, 140 S. Ct. 735, 742-43 (2020) (identifying Bivens, Davis, and Carlson as "the Court's three Bivens cases"). We need not resolve this tension, however, because Hill "does not bring a failure-to-protect claim and makes no allegations of prisoner-on-prisoner violence." See Mammana v. Barben, ___ F. App'x ___, No. 20-2364, 2021 WL 2026847, at *3 n.5 (3d Cir. May 21, 2021) (nonprecedential).

Abbasi sets forth a two-part test for determining whether a prospective Bivens claim may proceed. First, courts must ascertain whether the case presents a "new context." See id. at 1859. Second, if the case presents a new context, a court must then consider whether "special factors" counsel against extending the Bivens remedy. Id.

**A.    Hill's Remaining Claims Present a New Context**

We must first determine whether Hill's remaining claims arise in a new context. If the case differs "in a meaningful way from previous Bivens cases decided by th[e Supreme] Court, then the context is new." Id. And the meaning of "new context" is "broad." See Hernandez, 140 S. Ct. at 743. In Abbasi, the Court described that breadth as follows:

> Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider.

See Abbasi, 137 S. Ct. at 1859-60. To assess whether a context is new, we look "[o]nly [to] decisions by the Supreme Court"—decisions of the courts of appeals are irrelevant. See Mammana v. Barben, ___ F. App'x ___, No. 20-2364, 2021 WL

7

2026847, at *2 (3d Cir. May 21, 2021) (nonprecedential)³ (citing Mack v. Yost, 968 F.3d 311, 319 (3d Cir. 2020)). Importantly, "even a modest extension [of Bivens] is still an extension." See Abbasi, 137 S. Ct. at 1864. Indeed, a claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." See Hernandez, 140 S. Ct. at 743.

Hill contends neither of his Bivens theories presents a new context. He points to several post-Abbasi cases within the Third Circuit where courts allowed Eighth Amendment conditions-of-confinement and excessive-force claims against federal prison officials to proceed.⁴ In the wake of Abbasi, there was indeed some

---

³ The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

⁴ (See Doc. 354 at 13-14 (collecting cases)). In most of these cases, defendants did not argue—and so the courts did not address—whether a Bivens remedy remained for the Eighth Amendment claim. See, e.g., Allah v. Beasely, 3:18-CV-2047, 2019 WL 4511693, at *6-8 (M.D. Pa. Sept. 19, 2019) (Caputo, J.) (applying Abbasi to hold First Amendment retaliation claim was new context but screening conditions-of-confinement claim on merits); Landis v. Ebbert, No. 1:19-CV-470, 2020 WL 5819766, at *5-6 (M.D. Pa. Sept. 30, 2020) (Conner, J.) (applying Abbasi to hold First, Fifth, and Eighth Amendment claims for denial of recreation were new contexts but addressing excessive-force claim on merits); Smalls v. Sassaman, No. 1:17-CV-2237, 2019 WL 4194211, at *3-9 (M.D. Pa. Sept. 4, 2019) (Conner, J.) (applying Abbasi to hold First Amendment retaliation claim was new context but granting summary judgment to defendant on merits of excessive-force claim); see also Farrell v. Ortiz, No. 17-13585, 2019 WL 1375690, at *3 n.1 (D.N.J. Mar. 27, 2019) (declining to express opinion at screening stage "whether plaintiff can bring such a Bivens conditions of confinement claim post-[Abbasi]"); Francis v. Fuller, No. 3:14-CV-1248 (M.D. Pa.) (Munley, J.) (excessive-force claim proceeded to trial in absence of Abbasi argument); Kates v. Packer, No. 13-CV-1525 (M.D. Pa.) (Caputo, J.) (same). But see Simpson v. Horning, No. 3:19-CV-78, 2020 WL 5628994, at *5-7 (W.D. Pa. Sept. 21, 2020) (holding conditions-of-confinement claim was not meaningfully different from claim acknowledged in Carlson).

8

dissonance regarding the continued viability of such claims. Initially, defendants did not argue, and courts did not *sua sponte* consider, whether such claims for damages remained viable. As the dust settles, however, and courts begin to appreciate <u>Abbasi</u>'s watershed scope, the better-reasoned authority has declined to recognize a <u>Bivens</u> remedy for Eighth Amendment conditions-of-confinement and excessive-force claims.

Of the three cases in which the Supreme Court has recognized <u>Bivens</u> claims, only <u>Carlson</u>—involving an Eighth Amendment claim for failure to provide medical care—is tenably relevant. In <u>Carlson</u>, an inmate's estate brought suit alleging that prison officials had been fully aware of the inmate's serious "chronic asthmatic condition" as well as the "gross inadequacy" of medical facilities and staff at the Federal Correctional Center in Terre Haute, Indiana. <u>See</u> <u>Carlson</u>, 446 U.S. at 16 n.1. The estate alleged officials failed to provide the inmate "competent medical attention for some eight hours after he had an asthmatic attack," including an inordinate delay of his transfer to an outside hospital, all of which led to the inmate's death. <u>See</u> <u>id.</u>

At the outset, we note that the Supreme Court's approach to the Fifth Amendment claims of prisoner abuse raised in <u>Abbasi</u> suggests it may not find conditions-of-confinement or excessive-force claims to be within <u>Carlson</u>'s scope. The claims at issue in <u>Abbasi</u> arose under a different constitutional amendment than this case, and they involved markedly different facts (a warden's alleged deliberate indifference to an abusive environment toward certain immigration detainees after the September 11, 2001 terrorist attacks), <u>see</u> <u>Abbasi</u>, 137 S. Ct. at

1863-64, but they were in essence claims of failure to address or remedy prisoner mistreatment. The Court conceded the case had "significant parallels to . . . Carlson," which it also characterized as a "prisoner mistreatment" case. See id. at 1864. But the Court nonetheless refused to extend Bivens to the claims before it, concluding that the type of mistreatment alleged—"that a warden allowed guards to abuse pre-trial detainees"—was meaningfully different than the mistreatment at issue in Carlson. See id. at 1864-65. The Court underscored, *inter alia*, that the constitutional claims were distinct, the law as to the scope of the warden's supervisory responsibilities was not as refined, and there may have been other remedies available. See id. These differences, the Court reasoned, were enough to set the case apart from Carlson. See id.

A panel of the Third Circuit Court of Appeals provided additional guidance in a nonprecedential opinion issued two weeks ago. In Mammana, the court rejected the argument, similar to Hill's, that Carlson gives footing to an Eighth Amendment conditions-of-confinement claim against federal officials. See Mammana, 2021 WL 2026847, at *3. The plaintiff in Mammana challenged his "confinement in a chilled room with constant lighting, no bedding, and only paper-like clothing." Id. The court found that, other than sharing a constitutional amendment and the federal prison setting, there was "little resemblance" between the plaintiff's conditions-of-confinement claim and the estate's claim in Carlson "against prison officials for failure to treat an inmate's asthma." Id. (quoting Abbasi, 137 S. Ct. at 1860).

Hill alleges that defendants subjected him to cruel and unusual punishment by placing him in four-point restraints and by not releasing him from the restraints

to use the toilet during a 43-hour period, purportedly forcing him to lie in his own waste. (See Doc. 355 ¶¶ 39-44). This claim too "bear[s] little resemblance" to the medical deliberate indifference at issue in Carlson. See Abbasi, 137 S. Ct. at 1860; Mammana, 2021 WL 2026847, at *3. The claims arise under the same constitutional amendment, but the Supreme Court has made clear that a common constitutional basis is simply not enough to link a new Bivens theory to an existing Bivens context. See Hernandez, 140 S. Ct. at 743 (indicating courts must "look beyond the constitutional provisions invoked"). Nor is it enough that the new theory matches an existing context at a high level of generality, *i.e.*, "prisoner mistreatment." Cf. Abbasi, 137 S. Ct. at 1864-65; see also Hernandez, 140 S. Ct. at 743 ("[O]ur understanding of a 'new context' is broad.").

Other than high-level parallels, Hill's claims differ meaningfully from Carlson. They differ in terms of the nature and scope of the misconduct alleged, and they differ in the legal standards and judicial guidance that would apply to that misconduct. See Abbasi, 137 S. Ct. at 1860; see also Mammana v. Barben, No. 4:17-CV-645, 2020 WL 3469074, at *3 (M.D. Pa. June 25, 2020) (Brann, J.) (noting differing elements for medical-deliberate-indifference and conditions-of-confinement claims), aff'd, 2021 WL 2026847. Therefore, we agree with defendants that Hill's claims present a new context for purposes of Bivens.

### B. Special Factors Counsel Against Extension of the Bivens Remedy

Having concluded Hill's claims present a new context, we must determine whether "there are any special factors that counsel hesitation" in extending Bivens. See Hernandez, 140 S. Ct. at 743 (internal quotation marks and alterations omitted)

11

(quoting Abbasi, 137 S. Ct. at 1857). This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." See Abbasi, 137 S. Ct. at 1857-58. If a court "ha[s] reason to pause before applying Bivens in a new context or to a new class of defendants," then special factors counseling hesitation exist. See Hernandez, 140 S. Ct. at 743.

Although we may consider sundry special factors, see Bistrian, 912 F.3d at 90 (citing Abbasi, 137 S. Ct. at 1856-63), two "are 'particularly weighty': the availability of an alternative remedial structure and separation-of-powers concerns," see Mack, 968 F.3d at 320 (quoting Bistrian, 912 F.3d at 90). As to the first, it does not appear that Hill has any alternative remedies available. "Given the isolated nature of this incident, and the fact that [Hill] is no longer incarcerated at [USP Lewisburg], his claim is 'difficult to address except by way of damages actions after the fact,' which cannot be accomplished through the administrative grievance process or a habeas petition." See Mammana, 2020 WL 3469074, at *3 (quoting Bistrian, 912 F.3d at 92).

The absence of an alternative remedy, however, is not dispositive. We must still consider whether there are other factors—in particular, separation-of-powers concerns—that weigh against creating a Bivens remedy to fill the void. See id. (citing Wilkie v. Robbins, 551 U.S. 537, 550 (2007)). The essential inquiry "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" See Abbasi, 137 S. Ct. at 1857. In Abbasi, the Supreme Court said "[t]he answer will most often be Congress." Id. Thus, any special-factors assessment must seek to

12

discern whether Congress would want the federal judiciary to impose "a new substantive legal liability" in a given case.  See id. at 1857-58.

Congress's silence, particularly when it has already legislated in a given sphere, can be "telling" in this analysis.  See id. at 1862, 1865.  The Supreme Court has suggested that Congress's omission of a "standalone damages remedy against federal jailers" from the Prison Litigation Reform Act ("PLRA"), *enacted 15 years after* Carlson, may imply a congressional intent to limit Carlson's damages remedy to its context.  See id. at 1865.  Our court of appeals has disagreed with this notion as a broad proposition, opining Congress's silence in the PLRA does not necessarily signal its intent that "a Bivens cause of action should not exist at all."  Bistrian, 912 F.3d at 93; see Mack, 968 F.3d at 323-24 (quoting Bistrian, 912 F.3d at 93).  But as the court of appeals recently noted, "congressional silence on prison litigation can still counsel hesitation in *some* contexts," particularly when—as here—the alleged mistreatment is "different . . . than that alleged in Carlson."  See Mammana, 2021 WL 2026847, at *4.

The claims *sub judice* warrant hesitation.  The Supreme Court has never extended Bivens to claims for unconstitutional conditions of confinement against federal prison officials.  See id.  Nor has it extended Bivens to claims against federal prison officials for use of excessive force.  As illustrated by this case, such claims squarely implicate BOP policies regarding prison discipline and use of restraints. (See Doc. 346-3 (BOP program statement on inmate discipline); Doc. 346-2 (BOP program statement for use of force and application of restraints)).  These policies are inextricably tied to the preservation of institutional rules and order.  They

also implicate numerous health and safety issues. Adjudicating conditions-of-confinement and excessive-force claims would entangle the federal judiciary in byzantine issues of prison administration and institutional security, see Mammana, 2020 WL 3469074, at *4 (quoting Bistrian, 912 F.3d at 94) (internal quotation marks omitted), and would impact BOP operations "systemwide," cf. Abbasi, 137 S. Ct. at 1858. To imply a cause of action in these circumstances would cross the theoretical median into a lane "most often" reserved for Congress. See id. at 1857; see also Mammana, 2021 WL 2026847, at *4. As a growing number of courts have begun to conclude,[5] we hold that special factors weigh decisively against extending Bivens to this new context.

---

[5] See, e.g., Fuquea v. Mosley, No. 1:19-CV-1392, 2020 WL 3848150, at *5-6 (D.S.C. Mar. 6, 2020) (declining to extend Bivens to inmate's Eighth Amendment conditions-of-confinement claim that he was forced to sit in his own bodily waste for over two hours before receiving an opportunity to clean himself), report and recommendation adopted, 2020 WL 1899493 (Apr. 16, 2020); Brown v. Nash, No. 3:18-CV-528, 2019 WL 7562785, at *4-6 (S.D. Miss. Dec. 13, 2019) (concluding that Bivens did not extend to inmate's Eight Amendment claim of excessive force, noting, *inter alia*, that concerns of institutional security counseled hesitation), report and recommendation adopted, 2020 WL 129101 (Jan. 10, 2020); Hunt v. Matevousian, 336 F. Supp. 3d 1159, 1169-70 (E.D. Cal. Oct. 1, 2018) (declining to extend Bivens to inmate's Eighth Amendment claim of excessive force, noting that "Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim").

## IV. Conclusion

For the foregoing reasons, the court concludes that this matter presents a new context and that special factors counsel against extending the Bivens remedy to Hill's remaining claims for damages. The court, therefore, will grant defendants' motion (Doc. 341) for summary judgment. An appropriate Order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated: June 2, 2021